122    23
d126   80

122    23
s80NW 878

## STARBARD *v.* DETROIT, GRAND HAVEN & MILWAUKEE RAILWAY CO.

RAILROAD COMPANIES—PERSON ON TRACK—GROSS NEGLIGENCE.

Where, in an action against a railroad company for causing the death of plaintiff's intestate, it appeared from the undisputed testimony of the engineer and fireman of defendant's train that they gave proper signals of warning when they saw decedent on the track some distance ahead of the train, and that he, in apparent recognition of the signals, made a movement as if to step out of the way, but resumed his position of danger too late to permit of the train's being stopped in time to avoid striking him, it was error to permit the jury to find a verdict for plaintiff upon the theory that the failure to stop the train in time was due to the wanton and willful negligence of defendant's servants.

Error to Kent; Adsit, J. Submitted October 24, 1899. Decided November 22, 1899.

Case by Jennie M. Starbard, administratrix of the estate of Melvin Starbard, deceased, against the Detroit, Grand Haven & Milwaukee Railway Company, for the alleged negligent killing of her intestate. From a judgment for plaintiff, defendant brings error. Reversed.

*E. W. Meddaugh* (*Geer & Williams*, of counsel), for appellant.

*John M. Mathewson* (*Maher & Salsbury*, of counsel), for appellee.

LONG, J. July 16, 1896, the deceased was struck and killed by a train on defendant's road. This action is brought to recover damages on the ground that defendant's servants were guilty of gross negligence in not giving him warning of the approach of the train. It appears that the deceased was walking on the defendant's

track, about 12:30 p. m. of that day, near Lowell station. He lived a little east and south of where he was killed, had lived there about six years, and was familiar with the surroundings. He came upon the track near what was called the "County-Line Road," and had walked west between the rails about 100 rods before he was struck. The track was straight, and he could easily have seen the approaching train if he had looked. He was an able-bodied man, in full possession of all his faculties. The engineer testified that he blew the whistle for the County-Line crossing about 80 rods east of it; that he blew the whistle for the Lowell station as he passed over the County-Line road, which is a trifle over a mile east of the station, and continued to ring the bell; that, soon after crossing the County-Line road, he saw deceased between the rails, walking in a westerly direction; that, when the train was within about 300 feet of him, he blew the alarm whistle, and deceased stepped to the right side of the track, and he supposed he would step off, and for this reason did not slacken the speed of the train; that, when the train was within about 10 rods of deceased, he suddenly stepped to the left, and he (the engineer) immediately shut off steam and applied the air brakes and stopped the train, but that it had gone over deceased before the train could be stopped; that he did not see deceased look towards the approaching train, but did see him step to the right side of the track, and, from this movement, supposed he was aware of its approach, and that he would step off in time to avoid injury. This testimony was fully corroborated by the fireman.

The only witnesses who were examined on the part of the plaintiff in relation to the giving of the signals, and when they were given, were Wheeler Hull, Claude Westbrook, and Albert Bell. Mr. Hull testified that he heard the signals given for the County-Line crossing, which was about 130 rods east of where he then was,—at a barn, doctoring a horse. He saw deceased on the track just east of where he was struck. Witness also heard the

danger signals, and saw the train go by. His back was towards the train, and he was unable to locate where the train was when the alarm whistles were given; and he says he supposed deceased had stepped off the track until the train had stopped. Witness said further: "I did not then hear them give the station signal. I was not paying attention. I did not hear it at all. I do not say that they did not give it." Mr. Westbrook testified that he saw deceased come onto the railroad track at the county line, and he observed him walking down the track towards him; that witness heard the signals given for the County-Line crossing; that he also heard the danger signals, but could not state how far the engine was from deceased when they were given; that he did not hear the station signal; that a portion of the time he was watching Mr. Bell, who was coming across the field. Witness testified further:

"I would be something like 56 or 57 rods west of the King crossing. Looking at the train, I could not tell accurately how far the train was east of Starbard when it gave those signals. * * * I listened when it gave those signals. I went up to the engineer, and told him I thought he made noise enough there. I meant by that I thought the deceased ought to have got off the track. I referred to the alarm whistles."

Mr. Bell testified:

"I did not hear the train whistle after it passed the county line, not until it blew the danger whistle, when it was just a few feet from him. * * * The first thing that attracted our attention was the alarm whistle. The train was then east quite a little way. After hearing the alarm, we just looked up that way, and saw the man. It gave three or four sharp whistles, the same as for stock or anything on the track. * * * So that, not looking, I could not designate the distance between the man and the train at the time the whistles were given."

This last witness was examined at the coroner's inquest, and on the trial admitted that he there testified that he thought the train was four, five, or six rods from deceased when the alarm whistles were given. He was then asked:

"That was your best judgment at that time?

"*A.* Yes, sir.

"*Q.* And you think so now?

"*A.* Yes."

Counsel for defendant, at the close of the testimony, asked the court to direct a verdict in favor of defendant. This was refused, but the court directed the jury that the deceased was a trespasser on the defendant's right of way, and was negligent in his conduct in walking on the track, and not giving heed to the approaching train, and that "only defendant's alleged recklessness, wanton and willful conduct on the part of the engineer, can overcome against the negligence of the deceased." The court then charged the jury:

"If you find that the deceased, Melvin Starbard, lost his life because the defendant's train was wantonly, willfully, or recklessly run upon him, with knowledge that he was ignorant or unconscious of his danger, without the giving of signals or warning until it was too late for him to get to a place of safety, the plaintiff is entitled to recover.

"If you find that the engineer in charge of the train by which Starbard was struck and killed had good reason to believe that Starbard was unconscious of the danger to which he was exposed, and gave no warning signals until it was too late to stop the train before it struck Starbard, and too late for him to escape the danger, then the plaintiff is entitled to recover."

This charge was not warranted, under the undisputed evidence in the case. The testimony of the engineer, corroborated by that of the fireman, is not disputed, upon this record, that the station signal was given at the County-Line crossing; nor is it disputed that, some four, five, or six rods before the deceased was struck, the danger signals were given; so that the deceased had sufficient warning of the approach of the train, but, for some unexplained reason, continued to keep along the track. If he heard the signals, or the approach of the train, it was his duty to move off the track. If he did not hear them, he was negligent in that respect, for it plainly appears that

they were given, not only for the County-Line crossing, but also at the County-Line crossing for the station, and again given as a warning to the deceased. There is no evidence in the case of any gross, willful, or wanton conduct on the part of the engineer. So far as appears from the record, he did all that any prudent person could do to warn the deceased of the approach of the train. He was not called upon to check the speed of the train until he saw that the deceased was giving no attention, and he testifies that, from the movements of deceased on the track, he supposed he meant to step off in time. The engineer had the right, under the circumstances here shown, to believe that the deceased did hear the signals, and would get out of danger. *Frost* v. *Railroad Co.*, 96 Mich. 470; *Bouwmeester* v. *Railroad Co.*, 67 Mich. 87; *Lyons* v. *Railway Co.*, 115 Mich. 114; *Redson* v. *Railroad Co.*, 120 Mich. 671.

In *Johnson* v. *Truesdale*, 46 Minn. 345, the court directed a verdict in favor of defendant. It appeared that plaintiff was walking on the railroad track, between the rails, when he was overtaken, struck, and injured by a train going in the same direction on the same track. He did not hear the bell or whistle, although both were sounded as a warning to him when within 150 to 180 feet distant from him, and afterwards as it approached nearer. He was in possession of all his faculties. He was, however, looking at another engine near him on another track, which was making some noise. The court said:

"The case conclusively showed that the plaintiff was both a trespasser and chargeable with contributory negligence, and hence the defendant is not legally responsible unless the conduct of its servants in the management of the train after they discovered his danger was wantonly or willfully negligent. * * * Even if the case shows only want of ordinary care on the part of the defendant's servants, it would not justify the conclusion that they were intentionally or wantonly regardless of the plaintiff's safety. All reasonable and proper effort was made to warn him of the approach of the train, which was running at the rate of seven miles an hour. There

was no obstacle to prevent him from getting off the track. The defendant's servants operating the locomotive might presume that he was possessed of the ordinary faculties, and that he would heed the signals, and get off the track in time to escape injury; hence they were not required to attempt to stop the train until it appeared to be probable that he would not do so. *Erickson* v. *Railroad Co.*, 41 Minn. 500. It appears that, when this did become apparent to the engineer, he used all the means in his power to stop. Even if he erred in his judgment as to the probability that the plaintiff heard the signals, and would step aside before the train should reach him, and hence erred as to the time when he ought to have reversed his engine and applied the brakes, there is nothing to warrant the belief that he acted in reckless disregard of the plaintiff's safety. It is apparent that he tried to warn the plaintiff of the approaching train, and tried to stop the train when he realized the necessity for doing so."

It is just as apparent in the present case that the defendant's engineer gave the warning signals as soon as he apprehended the danger the deceased was in, and that he had before that given the signals which the statute requires. In fact, the plaintiff, by her declaration, alleges that—

"They [the defendant's servants] saw deceased nearly half a mile before the accident. After the engineer knew, or had good reason to know, that deceased was unconscious of the approach of the engine, and did not recognize the peril of his situation *and the warnings given,* he had ample time, and it was his duty, to stop the train before it overtook said Starbard."

The plaintiff therefore did not rest her case upon the claim that no warnings were given in time, but that after such warnings were given, and the engineer saw they were not heeded by the plaintiff's decedent, there was time then to stop the train and prevent the injury. The testimony most certainly does not sustain the claim.

The court should have directed a verdict in favor of defendant. The judgment must be reversed, and a new trial awarded.

The other Justices concurred.