THOMAS KELLEY v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

**Personal Injury:** NEGLIGENCE: CONFLICT IN EVIDENCE: VERDICT 1 OF JURY. Under the particular facts in the case the jury was warranted in finding that the injury to the plaintiff was caused by the negligence of the defendants' employes, notwithstanding the contributory negligence of the plaintiff.

*Appeal from Fremont District Court.*—HON. A. B. THOR-NELL, Judge.

WEDNESDAY, OCTOBER 29, 1902.

ACTION for personal injuries. Verdict and judgment for plaintiff. Defendant appeals.—*Affirmed.*

*Stone & Tinley* for appellant.

*W. E. Mitchell* for appellee.

McCLAIN, J.—The accident resulting in the injury for which plaintiff seeks to recover occurred at Hastings, in this state, and was occasioned by the engine of a freight train, which ran against the plaintiff, who was on or near the track in front of the engine. The plaintiff was in the employ of defendant as a section hand, and on the morning of February 28, 1900, by the direction of the section foreman, he started east from the depot at Hastings, with a spike maul and some spikes, for the purpose of going along the track in order to make such repairs thereon as he might find to be necessary. The morning was cold, and he wore a woolen cap pulled down over his ears. The train which ran into him was coming from the east, and at the time it struck him, another freight train, headed east, was slowly running along the passing track parallel

to the main track on which plaintiff was struck.    As to
these facts there is no controversy, but with reference to
the exact circumstances of the accident there is great con-
flict in the evidence.   It may properly be said that there
was some evidence that plaintiff was walking east, with
his maul on his shoulder, facing the approaching train,
and that he appeared to step aside with the intention of
avoiding it, but was nevertheless struck, as is suggested,
by reason of lack of judgment on his part in not stepping
far enough away from the track to avoid the engine.    But
as the principal question before us is whether there is any
evidence under the rules of law laid down for the direction
of the jury to support the verdict, we must take the view
of the evidence most favorable to the plaintiff, including
his own testimony as to what occurred; for, while counsel
for appellant contend that in very material matters the
plaintiff was uncorroborated, and that his testimony is
wholly overthrown by that of the witnesses for defendant,
we have to say that there is such conflict in the testimony
of defendant's witnesses, as compared with each other,
that we are not justified in disregarding the account which
plaintiff gives of how the accident occurred.    We find,
then, that there is evidence to show that plaintiff, having
proceeded some little distance eastward from the depot
along the main track, found a loose spike, and stopped to
drive another in its place; that at the time he did so he
had no reason to apprehend the approach of a train from
one direction rather than another, inasmuch as the freight
train which was the occasion of the injury was much be-
hind schedule time, and he had no information as to when
it would arrive; that in driving the spike he stood with
his back to the east, and, as above suggested, with his cap
drawn over his ears; that while he was in this position,
and engaged in driving the spike, the train in question
came from the east, the engineer and fireman both observ-
ing him to be upon the track; that the train was running

at the rate of about eight miles per hour; that when within about 200 feet of plaintiff the alarm whistle was blown, but no steps were taken to check the speed of the train; that the rails were frosty, so that it was more difficult to control the speed of the train than it otherwise would have been; that the train could have been stopped within the distance of about 150 feet; that when the train was within about 50 feet of plaintiff the fireman called loudly to him, to warn him of danger, but without success and that after that time it was impracticable to give any further warning than that which had been given, or to stop the train before reaching the plaintiff. The court directed the jury that under the evidence the plaintiff was guilty of contributory negligence, but left it to the jury to say whether, ''after the danger the plaintiff was in, and that he would not get off and away from the railroad track in time to avoid injury, was known to the employes of the defendant in charge of train No. 85, or ought to have been known to them in the exercise of reasonable judgment and care on their part, they might, by the exercise of reasonable diligence on their part in giving signals to warn plaintiff of his danger, or by using the appliances at their command to stop the train, have avoided the injury to plaintiff, and that, but for their negligence in this respect, the injury to plaintiff would not have happened to him.'' The jury found, in answer to a special interrogatory, that the defendant's employes were negligent in failing to use the appliances at their command to slow up and stop the train, and exonerated them from any negligence in failing to give the plaintiff warning. The question is, then, whether there is any evidence in support of this finding of negligence.

The theory of appellant's counsel is that, in the first place, there was no negligence on the part of defendant's employes, because they had reason to suppose that the plaintiff would not be negligent, and would leave the track

before the train reached him; and that, after it became apparent that he would not do so, it was too late to stop the train; and further, that plaintiff's negligence in not looking out for and avoiding the train was continually existing up to the very moment of the accident, and, even if defendant's employes were negligent, their negligence simply concurred with that of the plaintiff, and would not furnish a basis for recovery. Conceding plaintiff's negligence, and inquiring as to whether the employes of defendant exercised reasonable care in attempting to avoid injuring plaintiff, after the danger due to his own negligence became apparent to them, the question is how soon the duty devolved upon them to take steps to avoid injury to plaintiff, and what steps were required of them in the reasonable effort to avoid such injury. Without elaboration, we think that it may safely be said that when the defendant's employes in control of the train saw that, if plaintiff did not leave the track, he would be injured, and long enough before reaching plaintiff so that the train could be stopped before reaching him if he did not appear to give heed to the warning, it was their duty to give suitable signals for the purpose of attracting his attention and advising him of his danger. This, it appears, they did; but we think that it was their further duty, if plaintiff gave no indication that he was advised by these signals of his danger, and they had any reason to believe that he was not warned, to take steps to stop the train before it should reach him. There was evidence tending to show that it was within the knowledge of the engineer and fireman of the approaching train that plaintiff was standing with his back toward them, with his cap pulled over his ears, and engaged in driving a spike, and that a freight train, causing considerable noise by reason of the puffing of the engine and the rattling of the cars, was running on a track only a few feet from where plaintiff was standing. This was sufficient, in our judgment, to require of the engineer and fireman that

they take steps by slowing the train, and by stopping it, if necessary, to avoid injury to plaintiff in case he did not hear, or, hearing, did not heed, the warning given to him. We do not say that, if he had heard the warning, and persisted in remaining on the track, he could have recovered in the event that the train was not stopped before reaching him, but the evidence tends to show that he did not hear such warning. His negligence in not taking notice of the approaching train was, therefore, complete when it was near enough to him so that the employes in charge must commence to stop the train in order to avoid striking him, if he should not leave the track. We are not unmindful of the fact that this view may impose some irksome and annoying inconvenience on those engaged in operating trains. No doubt some persons, through mere foolhardiness or bravado, may, with knowledge of the approach of a train, remain on the track until it is so near that it would be impossible to stop it without an accident before reaching them, and then step out of the way; but, in view of the evidence that the plaintiff did not hear the approaching train, and had no immediate intention, therefore, of removing himself from the track, we think the defendant must be held liable for negligence of the employes in charge of the train in not taking steps to avoid running against the plaintiff. The danger that the operation of trains may be inconveniently i.terfered with by this rule is not sufficient to justify the assumption of the danger involved in putting a person who is on the track in danger of his life, should he, for any reason,—even his own negligence,—fail to notice the signal of danger.

Several of the cases relied on by appellant are those where the employes in charge of trains have had no reasonable ground to anticipate an accident unless the party who is subsequently injured should do some further act which would bring him into danger. Thus, where one apparently about to cross a railroad track turned, and walked

along the track, instead of crossing it, the employes in charge of an approaching train were held not to be guilty of negligence, if the injured party would not have met with the accident had he proceeded across the track in accordance with his apparent intention. *Schmolze v. Railway Co.*, 83 Wis. 659 (53 N. W. Rep 743, 54 N. W. Rep. 106). The cases of *O'Donnell v. Railroad Co.*, 8 Cent. Law J. 414, and *Valin v. Railroad Co.*, 82 Wis. 1 (51 N. W. Rep. 1084, 33 Am. St. Rep. 17), referred to in the case last cited, are of the same character. Other cases which counsel cite, such as *Davis v. Railroad*, 70 N. H. 519 (49 Atl. Rep. 108); *O'Brien v. McGlinchy*, 68 Me. 552; *Kirtley v. Railroad Co.*, (C. C.) 65 Fed. Rep. 386; *Railroad Co. v. Moseley*, 6 C. C. A., 641 (57 Fed. Rep. 921), are like that of *Keefe v. Railway Co.*, 92 Iowa, 182, in which it was held that the duty on the part of the railroad employes to use due care in view of the contributory negligence of one in danger only arises when such contributory negligence placing the person in danger becomes known to such employes. What is said in these two classes of cases with reference to concurrent or mutual negligence is not said, therefore, with reference to such a state of facts as is now before us. If, after the person in danger is aware of his danger, he continues negligent in not avoiding it, then his negligence, and not any negligence of the employes, is the proximate cause of the injury; but here, the danger of the person on the track being obvious to the employes, and there being reasonable ground for them to believe that such person was not aware of his danger, it was then their duty to look out for him, and failure to do so was negligence. *Orr v. Railway Co.*, 94 Iowa 423; *Masser v. Railway Co.*, 68 Iowa, 606; *Moore v. Railroad*, 47 Iowa, 688; *Morris v. Railroad Co.*, 45 Iowa, 29; *Little v. Transit Co.*, 88 Wis. 402 (60 N. W. Rep. 705); *Clark v. Railroad Co.*, 109 N. C. 430 (14 S. E. Rep. 43, 14 L. R. A. 749). If the employes had had reason to believe, in the exercise of due

care, that plaintiff was aware of the danger, then the case would be different.    *Starbard v. Railway Co.*, 122 Mich. 23 (80 N. W. Rep. 878).    But the question whether they had reason to believe that plaintiff knew of his danger was for the jury.    As is said in *O'Brien v. McGlinchy*, 68 Me. 552: "It is impossible to establish rules under which all cases can be arranged, considering the variety of circumstances under which the question of negligence arises." Language used in the case of *Sharp v. Railway Co.*, 161 Mo. 214 (61 S. W Rep. 829,) is also pertinent: "The facts and circumstances which bring a cause within this exception to the general rule that contributory negligence of the plaintiff or deceased precludes a recovery are as variant as the cases in which it has been invoked, and but little assistance can be derived from adjudicated cases, in which the facts are seldom analogous to the one in hand. To arrive at a correct conclusion in a given case, the only rational mode is to put ourselves in the place of the one charged with such conduct, and interpret his conduct in the light of all the facts and circumstances by which he was surrounded, and in view of which he acted." We are satisfied that under the facts in this case there was evidence sufficient to support the verdict of the jury.—Affirmed.