LEVY *v.* HOUGHTON COUNTY STREET RAILWAY CO.

RAILROADS—NEGLIGENCE—OPERATION OF CARS.

Deceased was walking in the country on the private right of way of defendant company, which operated a street and interurban railway. Seeing a car approaching four or five hundred feet away, he stepped outside the rails, put down between them a basket that he carried, and signaled the car to stop. It passed the usual stopping place or station without decreasing its speed of 15 to 18 miles an hour, and as it approached decedent he signaled a second time. The next station was about 1,500 feet away. Plaintiff's decedent stooped to pick up his basket when the car was 50 or 60 feet distant, and was struck and killed. A single step away from the track would have removed him from danger; he was in plain view of the car, facing it, and saw it approaching. *Held,* that deceased was guilty of contributory negligence, and that, since the motorman was entitled to rely on his stepping out of the way, defendant was not negligent.

Error to Houghton; Streeter, J. Submitted January 13, 1911. (Docket No. 82.) Decided February 1, 1911.

Case by A. Louis Levy, administrator of the estate of Samuel Sausonsky, deceased, against the Houghton County Street Railway Company. A judgment for de-

fendant on a verdict directed by the court is reviewed by plaintiff on writ of error.    Affirmed.

*Hanchette & Lawton*, for appellant.

*Allen F. Rees*, for appellee.

STONE, J.   This suit was brought under the survival act by the administrator of the estate of Samuel Sausonsky, deceased, against the defendant to recover damages for running intestate down and killing him, as alleged and claimed, in a wanton and reckless manner, on December 24, 1907, about noon of that day.

The defendant company operates a street railway between the villages of Houghton and Calumet, and passes through various mining locations, among which are the locations known as " Mesnard " and " Arcadia," on the property of the Quincy Mining Company.   These two locations are about 2,000 feet apart, and a station is maintained at each for the accommodation of passengers getting on and off the company's cars.   These stations are known, respectively, as " Mesnard Station " and " Arcadia Station;" the latter being located northeasterly of the former.   The company's right of way at this point was upon private property, and was inclosed by a wire fence. The track of the defendant was westerly of the county road which at " Mesnard Station " was nearly 300 feet distant, and at " Arcadia Station " was about 50 feet distant.   Considerable testimony was offered by the plaintiff tending to show that to approach these stations there were maintained at intervals openings or stiles in the fence, through which footpaths ran leading to the track, and passengers and the public in general passed and repassed along the track in getting off and aboard the cars at these stations.   A number of families of miners lived on the opposite side of the highway, and one or more between the track and the highway, between the stations.   There were also a number of farmers living in the neighborhood, and a number of families at Concord City, about three-

fourths of a mile distant, who, it was claimed, used the track in going to and from the Mesnard location or shaft and the Arcadia Station. This evidence was offered to show that the track was used to walk upon commonly by the public, with the knowledge of the defendant, and really at the invitation of the defendant. As in our view of the case, under the evidence, it makes no difference whether the decedent was rightfully upon the track or not, we shall not find it necessary to elaborate this point.

The track between the two stations ran upon an elevation or embankment built of mine rock and dirt, varying from $5\frac{1}{2}$ to 8 feet in height above the surrounding land, and the grade of the track was about eight feet wide, being about the length of the ties, and the width of the car body that passed over the track was about 7 feet 9 inches. There was a slight down grade from the Arcadia Station to the Mesnard Station. The decedent was 22 years of age. He was born in Russia, and had been in this country about two years. He was an intelligent, bright, healthy young man, and weighed from 160 to 180 pounds. At the time of the injury complained of, decedent was a pack peddler, and was carrying on his right arm a large basket filled with various goods and merchandise, and a pack supported by his shoulder and hanging at his left side. He had come upon the track about 1,000 feet southerly from Arcadia Station, and was walking toward said station between the rails. When he had reached a point about 300 feet southerly from the Arcadia Station, the car of defendant, from Calumet, came toward him from the opposite side of the station. The car was running at a speed of 15 to 18 miles an hour. As soon as the car came in sight of him, decedent took six or eight steps more, and then stepped on the tie at the left-hand side of the rail facing the car and set his large basket down on the track between the rails, and, with his right arm extended, made a signal. The motorman blew the regular whistle for the station, but did not stop there. Decedent made the first signal when the car was about 150 feet on the

opposite side of the station.    The car came on and did not stop at the station, and, as the car passed the station, decedent signaled a second time.    ˙He stood in this position on the same tie, and so remained until the car came within 50 feet of him, when he leaned over, apparently to pick up his basket, and he was struck by the car.    Decedent sustained a compound fracture of the back of the skull, and a fracture of the right leg, and died, as the result of the injuries, between 6 and 7 o'clock in the evening of the same day.    At the station the motorman shut the power off and let the car down the grade.    He did not check the speed of the car, or apply the brakes, or sound the gong, and the car ran about 300 feet beyond decedent before stopping.    It is not disputed that decedent saw the car and the motorman, and the motorman saw decedent when they were from 450 to 500 feet apart, and that each remained in open, clear view of the other until the injury occurred.    In fact, they were facing each other.    The circuit judge directed a verdict for defendant, on plaintiff resting his case, on the ground that no negligence of defendant had been shown.

The plaintiff has brought error, and the main question in the case is whether the circuit judge was justified, under the evidence, in directing a verdict for the defendant. We do not deem it important whether we consider decedent as a licensee or a trespasser.    We have these undisputed, prominent, and controlling facts:    He was walking along the railroad track of defendant, between the rails, towards Arcadia Station.    When he was about 300 feet from the station, a car running from 15 to 18 miles an hour towards him came into his view about 150 feet on the opposite side of the station.    He saw the car, because he beckoned or signaled.    He stepped outside of the rails, and set his basket down.    The car did not stop at the station, but came on at speed.    After beckoning the second time, and seeing that the car did not stop at the station, decedent continued standing outside of the rail.    When the car was 50 feet distant, he stooped over to pick up his

basket. From and after the time he stooped to pick up the basket, the car could not have been stopped, and the collision avoided by defendant. From the drawings and photographs placed in evidence by the plaintiff, it is shown to a demonstration that a single step away from the track would have removed decedent from all danger. The slope of the embankment was a gradual one. The snow was not deep. He should have stepped out of the way of the car. His failure to do so was gross negligence. The dangerous situation was created by the decedent, and the defendant was in no sense responsible. *Redson* v. *Railroad Co.*, 120 Mich. 671 (79 N. W. 939).

There was here no ignorance of the situation on the part of the decedent. Waiving for the moment the question of alleged negligence of the motorman, when decedent saw that the car was not stopping but proceeding rapidly on its way, common prudence required that he should step aside and let it pass. As was said by Justice MOORE in *Buckley* v. *Railroad Co.*, 119 Mich., at page 586 (78 N. W. 656):

"According to all the testimony, she was so near this track as to be struck by the passing train. If this did not constitute negligence, it would be difficult to find a case of negligence"—citing cases.

When the hour of the day, the openness of view, and the clearness of vision are considered, such conduct as is here shown amounts to gross negligence. *Trudell* v. *Railway Co.*, 126 Mich. 73 (85 N. W. 250, 53 L. R. A. 271); *Wade* v. *Railway*, 151 Mich. 684 (115 N. W. 713). But, irrespective of the question of decedent's negligence, is there in the record evidence sufficient to impute to the motorman gross or wilful negligence, or in fact or law any degree of negligence? We think not. His car was running at the usual speed of 15 to 18 miles an hour. He was approaching Arcadia Station, blew the whistle for that station, received no signal to stop at the station, and, there being no passengers at the station desiring to take the car, he did not stop. This seems to have been in ac-

cordance with the practice of the defendant. Between two stations less than 2,000 feet apart, it would be unreasonable to expect the car to stop. Under the conditions as they appear here, there can be no question of waving, or signals, or anything of that kind. The situation was apparent to both decedent and the motorman. It clearly appeared that the latter did not intend to stop his car. The question is, What was the duty of the motorman under the circumstances? Was it the duty of the motorman to check his car, or bring it to a stop whenever he saw a person—who saw him—on the track from 400 to 500 feet away, where by taking a single step that person would be out of all danger? Or, on the other hand, was not the motorman entitled to entertain the belief that a man so on the track would in the natural course of things step out of the way before the car reached him? We think so. It is a common-sense deduction that a motorman, seeing a man walking or standing on the track a number of hundred feet distant, knowing that the man has notice of his approach, must assume and may properly infer that the man will step out of the way of danger. This is not only a common-sense inference, but is the rule established by the authorities:

"A person has the right to act upon the assumption that the other party will exercise care." Baldwin on Personal Injuries [2d Ed.], § 147.

We are of opinion that the motorman was not guilty of any negligence in proceeding without checking or stopping the car, because he had the right, in the exercise of his common sense, to believe that decedent would step aside, and out of the way, and to rely upon and act upon such belief. *Buckley* v. *Railroad Co., supra; Trudell* v. *Railway Co., supra.* In the case of *Redson* v. *Railroad Co., supra,* it was said of the engineer:

" He was not required to check the speed of his train, or to take means to stop it, until he was chargeable with clear notice that the horses and Woodworth were in dan-

ger, and could not get off the track before the engine reached them. The assumed conduct of the engineer upon which the liability of this case is based is repugnant to human nature. No one but a man of the most cruel instincts would be guilty of it. There is nothing in this case to show that the engineer did not act with promptness as the situation appeared to him."

It is pertinent to ask when the motorman should be chargeable with clear notice that decedent would not get off the track. We think that he had the right to assume, up to the last moment, that decedent would step aside, and out of the way, and it is true that at such last moment it was too late to stop the car, or materially check its speed. *Wade* v. *Railway, supra.* So we repeat that the decedent could have easily avoided the danger by taking one step out of the way, when the car was within a few feet of him. The motorman had the right to assume that he would do so. *Lyons* v. *Railway Co.*, 115 Mich. 114 (73 N. W. 139), and cases there cited. In that case Justice GRANT, speaking for the majority of the court, said:

"A single step would have placed him beyond danger, and the motorneer had a right to act on the presumption that the deceased was in possession of his faculties, and would take the step. This could be done when the car was within 15 or 20 feet. What reason is there for saying that the motorneer was guilty in not anticipating that deceased would not take the usual precaution to protect himself?"

As was said by the circuit judge in this case, in denying the motion for a new trial:

"Cases where the circumstances showed that the one occupying a dangerous position was unaware, or might have been unaware, of an approaching car, and where the situation was such that the motorman might have known of that condition, can have no bearing on this case."

See, also, the following cases: *Starbard* v. *Railway Co.*, 122 Mich. 23 (80 N. W. 878), and cases there cited; *Kotila* v. *Railway Co.*, 134 Mich. 314 (96 N. W.

437); *Perego* v. *Railway Co.*, 158 Mich. 225 (122 N. W. 535). We are of opinion, therefore, that the circuit judge did not err in directing a verdict for the defendant.

Other assigned errors relating to rulings upon the admissibility of evidence, which we have not specifically treated, have all received careful consideration, and we find no prejudicial error in the record. The judgment below will be affirmed.

MOORE, MCALVAY, BROOKE, and BLAIR, JJ., concurred.