## PURULEWSKI *v.* DETROIT UNITED RAILWAY.

1. STREET RAILWAYS—NEGLIGENCE—OPERATION OF CARS.

> Evidence showing that the plaintiff was injured in a collision between a street car and a wagon, that she was walking near the curb on the sidewalk and was struck by a board from the wagon while the driver of the vehicle was crossing the street car tracks, that the view was unobstructed, and the motorman saw the wagon when the car was at least 225 feet distant, that the truck was heavily loaded and the tracks were slippery and the motorman did not reduce his speed so as to gain control of his car, except by cutting off the current, justified the trial court in submitting to the jury the question of the negligence of the defendant street railway company.

2. APPEAL AND ERROR—ASSIGNMENT OF ERROR—REVIEW.

> Under an assignment that the court erred in admitting evidence that the car which caused plaintiff's injuries was running faster than other cars had run during the morning in question, no question was raised for review, on appeal, as to testimony which the witness gave, that the cars were stopping as they stopped on other days, no such testimony as was covered by the objection being introduced.

3. STREET RAILWAYS—OPERATION OF CARS—SAND.

> It was not erroneous to permit the plaintiff to show the

effect of using sand on the tracks, and that sometimes the wheels hold and that the car skidded 135 feet after the motorman claimed to have applied the sand and reversed the car, where the court charged the jury that defendant was not to be charged with negligence simply because the motorman did not choose the most effective means of stopping the car, if he was found to have been in the exercise of reasonable care up to that point.

4. SAME—CHARGE.

*Held*, also, that the court did not commit prejudicial error in failing to give defendant's request to charge that no presumption of negligence arose because of the accident, having instructed the jury fully upon the burden of proof and as favorably upon other issues as the defendant was entitled to ask.

Error to Wayne; Hally, J. Submitted April 22, 1914. (Docket No. 103.) Decided June 1, 1914.

Case by Rosie Purulewski against the Detroit United Railway and another for personal injuries. Judgment for plaintiff. Defendant street railway brings error. Affirmed.

*Corliss, Leete & Joslyn* (*William G. Fitzpatrick*, of counsel), for appellant.

*Cullen, Casgrain & Hanley* and *S. G. Thompson*, for appellee.

STONE, J. This is an action on the case brought against the Detroit United Railway and Henry Mincel, the owner of a coal wagon, as defendants, to recover damages for an injury to the plaintiff, a married woman 55 years of age, which injury was caused by a collision between a car operated by the first-named defendant and a heavily loaded coal wagon of the other defendant, whereby a heavy plank was thrown from the top of the load of coal, striking the plaintiff, breaking her right leg, and otherwise severely and permanently injuring her, on the morn-

ing of March 9, 1912, at the southeast corner of Forest avenue and Riopelle street, in the city of Detroit. The trial resulted in a verdict and judgment for the plaintiff against both defendants. The defendant Mincel has not appealed, and proceedings were taken under Rule 10 of this court by the defendant Detroit United Railway, by which it has prosecuted its writ of error severally.

The following statement will aid in an understanding of the questions involved: Forest avenue runs east and west, and Riopelle street runs north and south. Forest avenue is 70 feet wide between lot lines, and 40 feet between curbs. Located in the center of Forest avenue at Riopelle street are the double tracks of the defendant railway, making about 15 feet of the avenue occupied by the street car tracks. This leaves a space of approximately 12½ feet between the street curbs and the nearest rails of the track on both the north and south sides of the avenue. Riopelle street is 50 feet wide between property lines, and 26 feet wide between curbs; there being 12 feet between each curb and the property line. Between Riopelle street and Russell street, which is the next street west of Riopelle, there are two alleys opening on the south side of Forest avenue. One alley is 129.35 feet west of the westerly property line of Riopelle. This alley is 15 feet wide. The other alley is 180 feet west of the west line of the alley first mentioned. This alley is 18.6 feet wide, and from the west line of that alley to the east lot line of Russell street is 108 feet, making the total distance from the east property line of Russell street to the east property line of Riopelle 450.41 feet.

On the occasion of the accident the plaintiff was standing on the sidewalk a few inches from the curb at the southeast corner of Forest avenue and Riopelle street. The duty of the defendant railway in operating its cars was alleged to be to direct, manage,

and control them with great care, caution, and vigilance, particularly where crossing intersecting streets, and to keep and see any and all persons and vehicles which were in and upon the highway, and to operate said cars at such a speed and in such a manner that they would have complete control thereof, so that the same could be easily and quickly checked, stopped, backed, or reversed, and their motion perfectly controlled, all for the purpose of avoiding collisions with vehicles, and thus avoiding injuries to persons lawfully in the street. It was further averred that, at the time of the happening of the grievances set forth, the defendant railway negligently and heedlessly failed to perform any one of its aforesaid duties. The evidence tended to show that at the time of the injury complained of the wagon belonging to defendant Mincel (loaded with five tons of coal, upon the top of which there were four boards or planks about 10 feet long by 8 inches wide and 1½ inches thick) was being driven south on Riopelle street, and, while being so driven, was struck by one of the defendant railway's cars moving in an easterly direction on the south track on Forest avenue. Plaintiff's right leg was broken below the knee. It was a compound fracture. It appeared that the wagon was almost wholly across the track when it was struck by the car, the car striking the wagon on the rear axle or hub with great violence; the conductor testifying:

"He jarred the car enough to bend it up, damage it, and he threw the coal wagon clear over on the sidewalk."

The motorman in charge of the car testified that he first saw the wagon starting to cross Forest avenue when he was in the middle of the block, upwards of 200 feet away. He testified, on direct examination:

"I made a stop at Russell street. Riopelle is the next street east of Russell. When I first saw this coal

wagon it was just breaking on Forest avenue from Riopelle street going south. It was moving. I was about in the middle of the block between Riopelle and Russell. As near as I can remember, I was about 60 feet west of the alley that is nearest Riopelle. When I saw the team come out of Riopelle street onto Forest avenue, proceeding towards the track, I began to ring my gong and throw off my power."

He further testified that he knew that the track was slippery before the accident happened. He testified:

"If I had a dry rail, going at the rate of 12 miles an hour, you could ordinarily stop the car in 60 feet. I attempted to stop it sooner this morning because I knew I was sliding. I knew the rail was slippery and I could not stop it as soon as I otherwise could stop it, and I attempted to make my stop as soon as I was at such a point with reference to the crossing as to enable me, in my opinion, to stop before I got to the wagon."

On cross-examination, he testified:

"When I saw the driver I was about 220 feet away. I moved on along a little ways before I applied my air. As soon as I saw the horses and wagon moving southerly, and about to cross the tracks, I did not apply my air. I said I shut off my current when I was in the middle of the block. I didn't apply the air right away; I went on without current. I did not apply the air immediately because I thought I had room enough, time enough, to stop without. I thought I could bring my car to a stop and permit the horses and wagon to clear the tracks. When I first saw the horses and wagon moving southerly on Riopelle street about to cross the company's tracks, I did not know whether the horses could cross before I would approach near enough to them or not. I believed that at that time. I approached Riopelle street, and when I got about to the alley west of Riopelle I put on my air and set the brakes; that is, from about 220 feet to the point alongside of the alley, I let my car roll along without current."

The driver of the wagon, called under the statute

by the plaintiff, testified that he came to Forest avenue and stopped; that he then saw the car at Russell street (450 feet away) and started to cross; that, when the horses' feet were on the south track, the car was 225 feet away; that it was about halfway between the two alleys; that he used all the speed he could to get across the track. He testified:

"The car did not decrease its speed or slow down any from the time I saw it in the middle of the block until it hit my wagon."

He qualified this later by testifying:

"It did not slow down until it got to the line of the sidewalk on the west side of Riopelle. When it hit the wagon, it hit it just hard enough to throw it to the east, and the boards fell off, and the coal spilt off, and the boards hit the woman. It threw my wagon about 10 feet, and it hit the snow bank, and broke it in half and threw it upon the sidewalk, and the wheels were pretty near the curbstone, and the boards hit the woman."

Upon the cross-examination of one of plaintiff's witnesses, counsel for defendant Mincel asked the following question:

"*Q.* Did you notice the cars were running that morning—that they were running and stopping any different than you had observed on other days?
"*Counsel for Defendant Railway:* I object to that as irrelevant and immaterial.
"*The Court:* You may take an answer and note an exception.
"*A.* They were stopping just like they did on other days."

The following question was asked the motorman, on cross-examination by counsel for defendant Mincel:

"*Q.* If, at that particular point as I have described it, Mr. Wellington, you had applied sand, state whether or not the car would have stopped, or would not have stopped?

"*Counsel for Defendant Railway:* I object as calling for a conclusion and as speculative.   *   *   *

"*The Court:* I think at that particular time, and that particular moment, is a matter for the jury's determination. I have no objection, don't misunderstand me, for your finding out what the effect is of the application of sand, and then you may argue to the jury, if he had used the sand at this particular time, would this have happened. I don't think you have a right to ask if he had done a thing at a particular time, unless everything—all of the circumstances—are included, and you are asking the question. Because, even if he had applied the sand, something else might have happened.

"*Counsel for Defendant Railway:* I think, may it please the court, I will have the record disclose an objection to your honor's ruling upon the motion, and for the reason your honor gives for sustaining it. *   *   *

"*The Court:* All right; you may proceed.

"*A.* When you apply sand to the track, sometimes the wheels hold on it, and sometimes they don't. If, when I was 150 feet away from Riopelle street, after I released my air, I had applied sand, I cannot state whether the car would have stopped, or would not have stopped sooner. After I released the air the car rolled along 10 or 12 feet, I presume. I just let it roll along until I could get it reversed. When I was 150 feet away from Riopelle street, I knew that I could not bring the car to a stop before I collided with the wagon. I was about 135 or 140 feet away from Riopelle street when I applied my reverse. I applied the sand just as I put on the reverse—put them on simultaneously. I skidded that distance of 135 feet."

The defendant the Detroit United Railway requested the court, among other things, to charge the jury as follows:

(17) "It does not appear that the motorman was guilty of any negligence in failing to observe the actions of the driver of the coal wagon."

(18) "The motorman was not guilty of any negligence or want of care in failing to watch his track ahead of him in the vicinity of the crossing at Riopelle street."

(20) "There is no evidence of negligence with respect to the speed of the car at any time before the motorman saw, or should reasonably have seen, that the driver of the coal wagon intended to attempt the crossing ahead of the car."

(21) "When, to avoid an impending collision, the motorman is obliged to choose instantly one of two appliances or methods provided for stopping the car or averting the collision, he is not guilty of, and his company is not chargeable with, negligence, because the event proves that the one he chose and used may not have been efficacious, or the best to meet the exigency."

(22) "Whether the one or the other means provided for stopping should have been adopted was a matter for the exercise of the motorman's judgment. For an error in its exercise the defendant could not be held responsible. Even the failure to have exercised the best judgment would not be evidence of negligence."

(30) "No presumption of negligence arises against the defendant Detroit United Railway in this case because of the accident and the injury to the plaintiff."

The following questions are raised and errors relied upon by appellant:

(1) There was no evidence of negligence upon the part of the Detroit United Railway, and the court should have directed a verdict in its favor.

(2) The court should have excluded the evidence that the car that ran into the wagon was running faster than other cars had run on the morning of, and before, the accident happened.

(3) That the court erred in ruling that it was competent to show by the evidence the effect of the application of sand, and then to argue from this whether, if sand had been used, the accident would have resulted.

(4) There was error in the court's action in refusing appellant's requests Nos. 17, 18, 20, and 30, and in modifying its written requests Nos. 21 and 22.

The court in part charged the jury as follows:

"If the jury believes from the evidence that the

accident resulted solely through the negligence of the driver of the coal wagon, then your verdict will be against the defendant Mincel and in favor of the defendant Detroit United Railway.

"The defendant Detroit United Railway primarily owed no duty to the plaintiff to check or stop its car before it reached Riopelle street.

"It does not appear that the motorman saw, or, in the exercise of reasonable care, should have seen, the position of the plaintiff and her proximity to the wagon and the scene of her injury at any time before the car struck the coal wagon.

"The extent of the defendant Detroit United Railway's duty to the plaintiff in this case was to use reasonable care and diligence to avoid injury to her, and, if it did so, it is not negligent, and your verdict would be in its favor.

"There is no evidence of failure on the part of the defendant Detroit United Railway to employ reasonably competent servants, and to furnish reasonably safe and adequate appliances and equipment upon its cars to control, check, and stop the same when necessary, and therefore no negligence can be imputed to it upon this theory.

"There is no evidence of negligence with respect to the speed of the car at any time before the motorman saw, or should reasonably have seen, that the driver of the coal wagon intended to attempt the crossing ahead of the car.

"When, to avoid an impending collision, the motorman, if up to this moment in the exercise of reasonable care, is obliged to choose instantly one of two appliances, in this respect I have modified the request as presented.

"*Mr. Fitzpatrick:* What part is that?

"*The Court* (continuing) : No. 21.

"When, to avoid an impending collision, the motorman, if up to this moment in the exercise of reasonable care, is obliged to choose instantly one of two appliances or methods provided for stopping the car or averting the collision, he is not guilty of negligence, and his company is not chargeable with negligence, because the event proves that the one he chose and used may not have been efficacious, or the best to meet the exigency.

"What is meant by that, gentlemen, is this: That if a man in the course of his duty, and while in the exercise of ordinary care, is suddenly confronted with a situation, and he does not use which at that moment, in his judgment, is the best thing to use, because the thing that he used does not do the work as well as another one might have done, the fact that he uses what, in his judgment, is the best thing does not make him chargeable with negligence.

"Whether the one or the other means provided for stopping the car should have been adopted was a matter for the exercise of the motorman's judgment. For an error in its exercise the defendant could not be held responsible. Even the failure to have exercised the best judgment would not be evidence of negligence.

"That is nothing more than a continuation, or a partial repetition, of the one previously given you, and all are given to you under the assumption that at the time of the exercise of the judgment, or, rather, up to the time when called upon to exercise this judgment, there was no want of care upon the part of the motorman.

"If the jury believes from the evidence that the motorman, from the moment he saw, or reasonably should have seen, that it was the intention of the driver of the coal wagon to attempt the crossing, used such means and facilities to check and stop the car as, in his judgment, would prove sufficient and adequate for such purpose, then he would not be negligent, and your verdict would be in favor of defendant Detroit United Railway.

"I have considerably modified No. 25.

"A motorman has a right to believe that a driver will not attempt to cross the track directly in front of the car, but that he would stop his team and wait for the car to go by. And he has a right to rely upon such belief until that moment when he sees, or reasonably should see, that the driver, disregarding the danger, intended to attempt the crossing. And, if from this moment the motorman used such means and facilities as he had at hand and as, in his judgment, would stop his car before it struck the wagon, then the motorman would not be guilty of negligence, and the defendant Detroit United Railway would not be

liable, notwithstanding his attempt to stop the car was not successful and the accident occurred.

"The plaintiff having called and sworn the witnesses Toporsky and Roth, she is bound by their evidence, in so far as she has not contradicted and disproved the same.

"Even if the jury should believe that the witness Toporsky did make some statement or claim as to the rate of speed at which the car was going at any other time or place than upon the witness stand, this would not be evidence of the fact as to the rate of speed, and would not be binding upon the defendant Detroit United Railway.

"The burden of proof rests upon the plaintiff in this case to satisfy you by a fair preponderance of the evidence of the negligence of the defendant Detroit United Railway in the particulars charged in her declaration against it, of her freedom from contributory negligence, and of the nature and extent of her injuries. * * *

"There is no evidence in this case from which the jury can find that it was reasonably practicable to stop the car sooner, or in a shorter distance, than it was stopped in under the conditions of the track and weather shown to exist."

1. It is the contention of appellant that there was no evidence of negligence upon its part, and that the court should have directed a verdict in its favor.

We cannot agree with counsel for appellant in this contention. We think that it was a fair question for the consideration of the jury whether or not the servant of appellant, the motorman, was negligent in failing to have got his car under control, and so kept it from the time he first saw the wagon attempting to cross the track. It is claimed by the driver of the wagon that the car was 450 feet away when he started to cross the track; that there was nothing to obscure the view. And the testimony of the conductor and motorman is to the effect that the wagon was at least 225 feet away when it was first seen by the motorman. We think it cannot be said, as matter of law,

that when the motorman saw this big wagon, heavily loaded with coal, upon the tracks, and knew that the tracks were slippery, and did not put his car immediately under control and so keep it, but simply cut off the current and let the car roll along, that the question of negligence was not one to be submitted to the jury.

We find nothing in the case of *Bush* v. *Railway Co.*, 113 Mich. 513 (71 N. W. 851), that conflicts with this view. In that case the question of negligence in the management of the car, under similar circumstances, was submitted to the jury, with approval of this court.

Our attention is also called to the case of *Levy* v. *Railway Co.*, 164 Mich. 572 (129 N. W. 683). We think a distinction should be made between that case and the instant case in this: In the *Levy Case* the motorman saw a man standing upon the track when a single step would have placed him beyond any danger. In the instant case the motorman saw a heavily loaded wagon, drawn by horses, the team and wagon being at least 25 feet in length, attempting to cross the track ahead of his car. In the nature of things, it would take considerable time for them to move off. We think the difference is apparent.

In the case of *Ablard* v. *Railway*, 139 Mich. 248 (102 N. W. 741), this court said:

"It was the duty of the motorneer to have the car under such control as to admit of its being stopped after he became able to discover objects on the track, and before a collision with such objects should occur, and it was his duty to give timely warning of his approach."

2. The assignment of error upon which this proposition is based does not sustain the position of counsel. Counsel says, in argument, that the court should have excluded the evidence that the car that ran into the

wagon was running faster than other cars had run on the morning of, and before, the accident happened. The assignment of error is based on the admission of the testimony which we have copied above. The evidence, instead of showing that the car which ran into the wagon was running faster than other cars, was to the effect "they were stopping just like they did on other days." We cannot see that any point is raised in this assignment for us to consider. If there was error in permitting the question to be asked, the answer was harmless, and the error without prejudice.

3. Notwithstanding the contention of counsel, and bearing in mind the holding of this court in *Nissly* v. *Railway Co.*, 168 Mich. 676 (131 N. W. 145, 135 N. W. 268, Ann. Cas. 1913C, 719), we do not find that there was any error in the ruling of the court to permit evidence as to the effect of the application of sand upon the track. We think that the matter was properly taken care of by the trial court in its charge to the jury, as above set forth.

4. We have examined the charge of the trial court with care, and are of opinion that it did not err in refusing to give defendant's seventeenth and eighteenth requests to charge, for the reason already stated, that there was a fair question for the jury upon the subject of whether the motorman properly put his car under control, and so kept it when he saw the impending danger; and we find no error in the modification of defendant's requests.

While the court did not give appellant's thirtieth request, yet it did instruct the jury as to the burden of proof and the duty of plaintiff to prove negligence of defendant, in the following language:

"The burden of proof rests upon the plaintiff in this case to satisfy you by a fair preponderance of the evidence of the negligence of the defendant Detroit

181 Mich.—10.

United Railway in the particulars charged in her declaration against it."

In conclusion, we will say that it appears to us that the charge of the trial court was as favorable to the appellant as could be reasonably asked.

We find no error in the record of which the appellant should complain, and the judgment of the circuit court is affirmed.

McALVAY, C. J., and BROOKE, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.