CHARLES E. WELSH v. TRI-CITY RAILWAY COMPANY, Appellant.

**Street railways:** OPERATION OF CARS: DUTY OF MOTORMAN. The duty of a motorman on a street car, to keep a lookout for persons within or approaching the zone of danger, is greater than that of an engineer in charge of a steam railway engine, operated upon a track where there is no reason to anticipate the presence of people.

**Same:** NEGLIGENCE: LAST CLEAR CHANCE: SUBMISSION OF ISSUE. Where the evidence, as in this case, showed that the motorman saw plaintiff working near the track, in a position of danger and without apparently noticing the approach of the car, in time to have stopped the car by the exercise of reasonable care and thus have avoided the accident, the defendant was liable for the injury although plaintiff may have been negligent in placing himself in a position of danger, and the case was properly submitted on that theory.

**Same:** ⚫LAST CLEAR CHANCE. The doctrine of the last clear chance does not involve a recognition of liability in case of concurrent negligence, nor does it involve any case of comparative negligence, but requires one to use reasonable care for the safety of another in the condition in which the latter, though negligently, may have placed himself.

**Excessive damages:** REDUCTION OF VERDICT. Where the court may have found from the evidence that the verdict was excessive, not because of passion or prejudice, but because the jury misconceived the proper measure of damages, the court's action in permitting a reduced verdict to stand rather than setting it aside *in toto* was not error.

*Appeal from Scott District Court.*—HON. JAS. W. BOLLINGER, Judge.

FRIDAY, JULY 8, 1910.

ACTION to recover damages for personal injuries al-

leged to have resulted from negligence of employees of the defendant company in operating a street car so that the same ran against and upon the plaintiff. There was a trial to a jury, and a verdict for the plaintiff for the sum of $17,000. On a motion for a new trial, the court required the remission of the excess in the verdict over $10,000. Plaintiff elected to accept a judgment for that amount, and from such judgment the defendant appeals.— *Affirmed.*

*Lane & Waterman,* and *Cook & Balluff,* for appellant.

*Ely & Bush,* and *Wade, Dutcher & Davis,* for appellee.

McCLAIN, J.—The plaintiff, at the time of receiving the injury complained of, was in the employ of the People's Light Company, which was laying a main along the north side of East River Street in the city of Davenport, a street running practically east and west on which were two lines of track of the defendant street car company. His business at the time was to work at pumping water from the ditch by means of a pump and hose, and discharge it through a simple wooden trough across the north railway track. His hours of work were during the nighttime and extended until the time for the regular force of men to go to work in the morning. The street cars of the defendant ran along the tracks in this street about twenty minutes apart each way until midnight, and then about one hour apart each way until about five o'clock in the morning, when cars were started out again on the shorter schedule. While cars were being run on their regular schedule, they were run west on the north track and east on the south track, but it seems that for some reason connected with the convenient distribution of the cars the first car started out in the morning on the shorter schedule would run west on the south track instead of on the north track, and it was

this first car running west on the south track which collided with plaintiff and caused the injury complained of.

From the evidence the jury may have properly found that plaintiff had been directed by his employer, when he saw a car approaching on the north track, which would usually be from the east, to pick up the end of his trough and lay it between the two tracks leaving the north track free for the passage of the approaching car, and that in doing so he should face to the west so as to see any car approaching from that direction on the south track which would put him in peril. In other words, his duty seems to have been to get his trough off of the north track when a car was approaching on that track and to pass far enough to the south to be out of the way of the approaching car which would usually be from the east, and at the same time keep a lookout for a car from the west; for there was not sufficient room between the two tracks to enable the plaintiff to stand in such a position as to be at once out of danger from cars either way. The jury might also have found under the evidence that on this particular occasion the plaintiff saw the car which subsequently collided with him approaching from the east around a slight curve, and, supposing it to be on the north track as usual picked up the north end of his trough and carried it eastward and south in order to clear the north track and placed himself on the south track, or so near thereto, as to be in danger of collision with the car from the east which was in fact on the south track. Had plaintiff observed that the car was in fact on the south track, there would have been no occasion for him to move his trough and he might have continued his occupation of pumping without interruption. The plaintiff did not, according to his testimony, look again to the east after he started to carry the north end of his trough around toward the south track and was struck by the car and severely injured.

The court instructed the jury that plaintiff was negli-

gent in failing to see that the approaching car was running on the south track, and in placing himself in a position to be injured by such car, and submitted to the jury but one question—that is, whether the motorman on the approaching car failed to exercise reasonable care to discover plaintiff's peril and to avoid injury as soon as it was reasonably apparent that plaintiff was in danger or was going into a place of danger—and authorized a recovery by the plaintiff if it should be found that in the exercise of reasonable care after the motorman saw or might have discovered in the exercise of reasonable care that plaintiff was thus in a position of danger, he could have avoided the injury by stopping his car. In other words, the sole question submitted to the jury was one involving the application of the doctrine of the last clear chance.

It is not necessary in this case to discuss the question whether the motorman in charge of a street car is bound to look out for persons on the street in such sense that the company is liable for failure to avoid injury

1. STREET RAIL-
WAYS: opera-
tion of cars:
duty of
motorman.

to a person who has placed himself negligently in a position of danger, for the jury might have found under the evidence that the motorman did in fact see the plaintiff in a position of danger, or at least approaching a position of danger in time to have avoided injury to him. It is well settled however that the duty of the motorman on a street car to be on the lookout for persons within or approaching the zone of danger is different from that of an engineer in charge of a railway engine operated along a right of way where there is no reason to anticipate the approach of persons to the track. *Doherty v. Des Moines City Ry. Co.,* 137 Iowa, 358; *Barry, Adm'r, v. Burlington Ry. & L. Co.,* 119 Iowa, 62; *Doran v. Cedar Rapids & Marion City Ry. Co.,* 117 Iowa, 442. The court did not in this case require that the jury should find wilfulness or wantonness on the

part of the motorman, and we have no occasion to consider what the rule might be if there were such evidence.

The case was therefore submitted to the jury on the theory that if the motorman saw, or in the exercise of reasonable care might have seen, that the plaintiff was in a position of danger from the approaching car, or was putting himself in such position of danger without noticing the approach of the car, and while he might in the exercise of reasonable care have stopped the car before injuring the plaintiff, then the defendant was liable notwithstanding the negligence of the plaintiff in putting himself in such position of danger. The evidence justified the submission of the case on that theory, for, as already indicated, it tended to show that the motorman did see the plaintiff near the south track in such position that he was not likely to observe the approach of the car, and apparently not giving attention to such approach in time to enable the motorman to stop the car before it struck the plaintiff. It must have been reasonably apparent to the motorman that the object of the plaintiff in carrying the end of his trough to the east and south was to clear the north track, and as no car was in sight coming from the west, the jury may well have found that the apparent purpose of plaintiff was to pass to the south track, or so near it as to be in a position of danger from the approaching car in order to clear the north track for the supposed approach of this car coming from the east.

2. Same: negligence: last clear chance: submission of issue.

While it is true that a motorman is not bound to anticipate that a person not already in a position of danger from the approaching car will negligently put himself in such position of danger, yet when the motorman sees that a person on the street is apparently placing himself in a position of danger without being aware of the approaching car, it is plainly his duty to take cognizance of that fact and avoid injury to him if practicable, and we have

recognized the rule that under such circumstances the negligence of the person in danger, which has thus become apparent to the motorman, will not relieve the street car company from liability for the negligence of the motorman in not taking reasonable precautions to avoid an accident. *McCormick v. Ottumwa R. & L. Co.,* 146 Iowa, 119. In that case it was found that under the evidence the motorman could not have reasonably anticipated that the person injured was about to go upon the track ahead of the approaching car in time to have avoided injury to him, but in *Kelley v. Chicago, B. & Q. R. Co.,* 118 Iowa, 387, cited with approval in the case last above referred to, and which is analogous in view of the fact that the engineer in charge of the engine saw the person who was in danger on the track negligently failing to keep any watch for the approaching engine, it was held that notwithstanding the negligence of the person on the track the railway company was liable if the engineer failed to use reasonable care in avoiding injury to him.

In view of the application of the doctrine of the last clear chance which we have thus recognized, we see no error in the submission of this case to the jury on the theory on which it was submitted. Such theory does not involve a recognition of liability in case of concurrent negligence, nor does it involve any case of comparative negligence. The motorman was bound to use reasonable care not to injure the plaintiff in the condition in which the plaintiff had placed himself, even though he was guilty of negligence in thus putting himself in a position of danger which he might have avoided by reasonable precautions. In the recent case of *Bruggeman v. Illinois Cent. R. Co.,* 147 Iowa, 187, the court was divided in opinion as to whether the doctrine of the last clear chance was applicable under the facts. The majority of the court held that in the application of that doctrine it is not necessary to find that the negligence of

3. SAME: last
clear chance.

the injured person had ceased to operate before the accident occurred, and that it was sufficient to call that doctrine into play if the defendant's employee knew of the danger in time to have avoided injury to the person in peril in the exercise of reasonable care, even though he was negligent in putting himself in a place of danger and continued to be negligent in not looking out for his own safety. The judge who dissented from this statement of the rule expressed the view that the plaintiff in such a case could invoke the doctrine of the last clear chance only on the theory that, if his intention to go into a position of danger became apparent to the engineer operating the approaching engine in time to have enabled him in the exercise of ordinary care to stop his engine, it was negligence not to do so. The theory on which the case now before us was tried seems to have been in accordance with the views of this court expressed in several cases, and not contrary to any views expressed in any of the cases on this subject, and, as there was sufficient evidence to support the finding of the jury for the plaintiff on this theory, we should not interfere with the judgment.

There is a further contention on the part of the appellant that the verdict of $17,000 was so manifestly excessive as to indicate passion and prejudice requiring the setting aside of the verdict *in toto,* and not merely its reduction in amount. Without setting out in detail the evidence as to the extent of plaintiff's injuries, which we think under the circumstances to be wholly unnecessary, we are content to say that the trial court may well have found that the verdict was excessive, not on account of any passion or prejudice with reference to plaintiff's right to recover, but only on account of a misconception on the part of the jury as to what should be allowed under proper rules as to the measure of damages, and therefore we are not willing to

4. EXCESSIVE DAMAGES: reduction of verdict.

hold that the court erred in allowing the verdict to stand for a reduced amount.

Finding no error in the record, the judgment is *affirmed*.