STELLA E. CHANDLER *v.* HARRY P. MILES.

(*March* 20, 1937.)

LAYTON, C. J., sitting.

*Tunnell and Tunnell* for petitioner.

*Ralph S. Baker, Frank M. Jones* and *William S. Potter* (of Ward and Gray) for respondent.

Superior Court for Sussex County; Petitions to vacate judgments, Nos. 114, 115 and 116, April Term, 1936.

LAYTON, C. J., delivering the opinion of the Court:

The Court, on application, allowed forty-five minutes on each side for argument to the jury. At the conclusion of the opening argument by one of the petitioner's counsel, Mr. Potter, of the respondent's counsel, stated to the Court that in view of what he considered to be the clear state of the evidence, no argument would be made on behalf of the respondent. Thereupon, petitioner's counsel claimed the

right to renew the opening argument. This the Court refused to permit, and the issues went to the jury without further argument. *Tyre v. Morris,* 5 *Harr.* 3.

It is now contended that the denial of the application of petitioner's counsel to renew and extend his opening argument was erroneous and prejudicial. The reasoning is somewhat contradictory. In their brief, petitioner's counsel say: "The petitioner does not contend that the Court would not have the discretionary power to exclude her counsel from further argument, but she does contend that, under the particular circumstances, the Court's discretion ought not to have been so exercised." This suggests an abuse of discretion; but they also contend that, as the Courts of this state are not allowed to charge on the facts, they had the right to utilize the full time allowed for a review of the facts, as being "absolutely necessary in order to make our system fair." This suggests entire want of discretionary power.

[1] The authorities generally agree that the regulation of arguments to the jury is a matter within the reasonable discretion of the Court. *Henry v. Dussell,* 71 *Neb.* 691, 99 *N. W.* 484, 485; *Citizens' St. Ry. Co. v. Huffer,* 26 *Ind. App.* 575, 60 *N. E.* 316; *Koontz, Phillips & Stamm v. Mylius,* 77 *W. Va.* 499, 87 *S. E.* 851; *New York & L. B. R. Co. v. Garrity,* 63 *N. J. Law* 50, 42 *A.* 842; *Hackney v. Delaware & A. T. & T. Co.,* 69 *N. J. Law* 335, 55 *A.* 252; *Jewell v. Wisconsin-Minnesota L. & P. Co.,* 181 *Wis.* 56, 194 *N. W.* 31; *Seattle & M. R. Co. v. Roeder,* 30 *Wash.* 244, 70 *P.* 498, 94 *Am. St. Rep.* 864. In *Hunnicutt v. Ga. Ry. & P. Co.,* 26 *Ga. App.* 407, 106 *S. E.* 296, the Court speaks of the right to address the jury as an "invaluable right," and seems to say that it is a right of which counsel could not be deprived without warning. In the *Koontz Case,* the Court speaks of possible surprise to plaintiff's counsel arising from the refusal of defendant's counsel to argue the case,

but the language was used in expressing approval of the discretion of the trial court in permitting further argument, and is not to be understood as expressive of an opinion that there would have been an abuse of discretion if the Court had refused further argument.

There is no merit in the contention that the case of *Tyre v. Morris, supra,* should be ignored for the reason that, in that time, Courts were permitted to charge on the facts. As that case plainly shows, Courts did not always review the facts; nor is there reason to suppose that the Court there did not consider the refusal to permit further argument on behalf of the plaintiff, after the close of the opening argument, to be a matter within the discretion of the Court.

Nor is there merit in contention that there is a recognizable distinction between the situation arising where the plaintiff's counsel waives his right to open, followed by waiver by defendant's counsel, and the situation where the plaintiff's counsel makes an opening argument, and the defendant declines to make an argument. In the first situation, it was urged that plaintiff's counsel would have no cause to complain; but where an opening argument is made, there is no waiver, but, on the contrary, there is an open indication of a desire to be allowed opportunity to make a full summation. This attempted distinction is, perhaps, too subtle for the average intelligent mind to grasp. It may appeal to the casuist.

 The one sustaining the affirmative has the right to open the case to the jury. The opening may be nominal or real, and it may consume all or a part of the allotted time. He also has the right to reply if the time allowed has not been consumed, and if there is anything to which a reply can be made. The closing argument, however, should be in strictness, a reply argument, although this prin-

ciple is honored more in its breach than in its observance. Whether the opening argument is nominal or real, the risk is run, if it be considered a risk, of meeting a declination to argue by the opponent; and, ordinarily, a further or second opening will not be allowed. This is the correct practice, and is supported by reason and authority. It is, generally, a fair practice; for very frequently, the prosecutor, or counsel for the plaintiff, makes a mere nominal opening, and reserves almost his full time, not to reply to the defendant's argument, but to state his own case. If one seeks that advantage, one not rightfully to be claimed, he ought not to complain if his opponent elects to say nothing. If a full opening is made, as here, he has less ground for complaint, for whatever advantage there may be in a review of the facts he has enjoyed.

While this is the customary practice, generally to be followed, the Court, in the exercise of a reasonable discretion, may allow a more complete, or second, opening, or other departures from the rule if circumstances require; but where, as here, a full opening was made, the issues simple and the evidence not intricate, a departure from the rule was not justified.

The real basis of the petitioner's contention appears to be that the Court, in refusing her counsel the right further to argue the case after the opening argument was ended, abused its discretion for the reason that they had been led to believe that respondent's counsel would argue the case, and were taken by surprise when they waived their right. In the considered language of their brief, petitioner's counsel say that the petitioner was "victimized by a trick"; that the conduct of respondent's counsel was "deceptive as to their intention," and that "the conduct of counsel was not fair play and was calculated to be deceitful in respect to their intention to argue." In addition to these epithetical and provocative expressions of opinion, there is embodied

in the brief the flat statement of fact that respondent's counsel had deliberately planned in advance what is termed a "trick." How this fact, if it be a fact, may be supposed to be in the knowledge of the Court is not understandable. Counsel's brief is not the proper place for statements of alleged facts upon which reliance is to be had on a motion in arrest of judgment and for a new trial. If unfair, improper, or prejudicial conduct of opposing counsel is to be brought to the attention of the Court, the way is open, but that way is not through counsel's brief of argument.

Respondent's counsel did suggest that one-half hour be allowed on each side for argument, and it was announced who would speak for the respondent. It may be true also that they had agreed not to argue the case; but there was nothing in their behavior or conduct, or in their agreement not to argue, if they did so agree, that justified the acridity of expressions contained in the brief of petitioner's counsel. Respondent's counsel are reputable lawyers and men. If they chose not to argue the case, it may be supposed that they were of opinion, as was stated, that the state of the evidence did not compel an argument on their part. The petitioner had the benefit of whatever argument there was. The opening argument, admittedly, was a full presentation of the petitioner's case; and there was nothing in the state of the testimony to justify a reasonable belief that further argument would change the result. *Conrad v. Cleveland, C., C. & St. L. Ry. Co.*, 34 *Ind. App.* 133, 72 *N. E.* 489, and *Southern Kansas Ry. Co. v. Michaels,* 49 *Kan.* 388, 30 *P.* 408, are directly in point. In each case refusal by defendant's counsel to argue was urged as prejudicial misconduct, and refusal by the trial court to permit further argument on behalf of the plaintiff was alleged as an abuse of the discretion and error. In the first case it was said that the discretion of the trial court should not be interfered with except in extreme cases, and that

there was nothing in the record to show that there was anything to prevent the opening from being made as complete as possible, and nothing except speculation to indicate that the conclusion of the jury under any argument, would have been different. In the second case, the Court was unable to perceive any misconduct of counsel, or error on the part of the trial court; and went on to say that it was not fair for the plaintiff, in an opening argument, to consume a few minutes only, and then make the main or principal speech in closing.

The last reason advanced is based upon after discovered evidence.

In the supporting affidavit of the petitioner it is averred that before the trial of the issues she had made a diligent search through her papers in an effort to obtain any evidence which would be material in the light of the claims which she was informed at that time Mr. Miles would make at the trial; that in obtaining evidence to submit to her counsel for use in the trial, she had no suspicion that the evidence which she now advances as new evidence was, or could be, material, for the reason that in the summer of 1936, at the office of one of the respondent's counsel, she had been expressly informed that she had signed the note, dated December 9, at Mr. Miles' store in Atlantic, Virginia, and that she had signed the other two notes, dated August 1, 1930, in her husband's office in Dagsboro; that she had been led to believe until the trial that the dates appearing on the notes represented the dates of their execution; that she did have some knowledge of a note for $6,000, but was unable to produce it on immediate notice, for the reason that it and the other documents were found among a mass of papers accumulated and kept unassorted in baskets; that she could have produced the documents at the trial had she not been misinformed as to the time of her alleged signing of the three notes, and had she been warned of the alleged

settlement at the end of 1929, or the first of 1930, in which the three notes were alleged to have been involved; that the note, two checks and letter which are offered as newly discovered evidence are genuine, that she found them among her husband's papers, and that they had been in her custody since her husband's death.

The documents were not produced. In the statement of the reasons for a new trial they are stated as follows:

A promissory note, dated January 1, 1930, in the amount of $6,000, payable four months after date, to H. P. Miles, signed by W. B. Chandler and Stella E. Chandler, and receipted as paid on April 11, 1930, by "H. P. M."

Two checks, dated December 28, 1929, and January 6, 1930, to H. P. Miles, in the amounts of $2567.10 and $2432.45 respectively, each check signed by W. B. Chandler, endorsed by the respondent, and marked paid by the Bank on which they were drawn.

A letter, dated March 5, 1929, at Atlantic, Virginia, signed by H. P. Miles, of which the first three paragraphs only were set forth.

It is not averred in the affidavit that the documents are material to the issues, or in what way they are material.

The letter will not be considered. If counsel, upon a motion for a new trial on the ground of newly discovered documentary evidence, such as a letter, elects to set out a part of the letter only, without explaining why the whole of it is not set forth and with no averment that the portions omitted are not in anywise material, they need not be surprised if the Court should refuse to consider the document at all. What is said, therefore, is with reference to the note and the checks.

Application for new trials on the ground of

newly discovered evidence are not favored; and to prevent, as far as possible, fraud and imposition which defeated parties may be tempted to practice as a last resort to escape the consequences of an adverse verdict, such applications are subjected to the closest scrutiny, and the burden is upon the applicant to rebut the presumption that the verdict is correct and that there has been no lack of due diligence. 20 *R. C. L.* 290; *Vansant v. Kowalewski,* 5 *Boyce* 92, 90 *A.* 421. The granting of a new trial is within the sound and reasonable discretion of the trial court. *Bringhurst v. Harkins,* 2 *W. W. Harr.* (32 *Del.*) 324, 122 *A.* 783; *Townsend v. Poynter,* 3 *W. W. Harr.* (33 *Del.*) 53, 130 *A.* 267; and will be allowed only where the Court is convinced that a new trial would be in furtherance of justice. *Gatta v. Philadelphia, B. & W. R. Co.,* 2 *Boyce* 551, 83 *A.* 788; *Vansant v. Kowalewski, supra.* It must be made to appear that the new evidence is such as will probably change the result if a new trial is granted; that it could not have been discovered before the trial by the exercise of due diligence; that it is material to the issue; that it is not merely cumulative; and that it is not merely of an impeaching or contradictory character. *Bringhurst v. Harkins, supra; State v. Lynch,* 2 *W. W. Harr.* (32 *Del.*) 600, 128 *A.* 565.

These are the general principles long recognized by the courts of this state.

First with respect to the exercise of diligence: The petition discloses that it was the purpose of the petitioner to attack the judgments in two ways. It was averred that there was no amount due from the petitioner to the respondent, and one of the prayers was to open the judgments to ascertain what amount, if any, was due and unpaid on the judgments. The petitioner at the trial testified that she never knew that her husband was indebted to the respondent, although he had had extensive business relations with him over a period of years; yet, she now offers

a note, admittedly genuine, signed by her husband and herself, for $6,000, and of a date which brings it within reasonable range as to time of the indebtedness for which the three notes entered in judgment were given; and she admits she had some knowledge of this note. From this aspect of her sworn petition, the basis of her attack was upon the ground either that there never was a debt owing from her husband to the respondent, or that it had been paid. Common prudence and ordinary caution should have compelled a thorough search for all documents, letters, checks and notes, within a reasonable range of the times of the giving of the notes in dispute. But, she avers that she was misled by a statement made to her by the respondent as to where the disputed notes were signed by her, and by the deception and confusion as to the dates of their execution. There was, from her own admission, no deception as to the place of signing the note dated December 9. She admits that the respondent told her that this note was signed at his store in Atlantic, Virginia. The date, as was apparent from an inspection of the note was 1928, or 1929, dependent upon whether the figure 8 had been changed into a figure 9, or the figure 9 to the figure 8. This note comprised a third of the indebtedness. It was for a considerable amount, and the seeming confusion as to dates was not such as to cause a reasonable person to forego a thorough search of documents which might have a bearing on indebtedness existing as of the time, or times, disclosed by the note. At the trial the petitioner testified that the respondent told her in the summer of 1936, that the other two notes had been signed by her at her husband's office in Dagsboro. This the respondent denied, and he testified that he had told her that all of the notes had been signed by her at his store, in Atlantic, Virginia. The jury heard the evidence, presumably considered it, and found against her. But, apart from this fact, the dates of the two notes were either in 1931, or 1930, and an inspection of them plainly showed

that the last figure in the dates had been changed from the figure 1 to a naught, so that the petitioner was informed of the possible dates, or range of time of the indebtedness. From any aspect of the case, whether it was the petitioner's intention at the first to attack the judgments by showing that they had been paid in full or in part, or by showing that, as there was no indebtedness at all, or not in the amount as claimed, her signatures thereto were necessarily forgeries, the petitioner was required, in the exercise of reasonable diligence, to make a search of her husband's papers to discover, if possible, any evidence which would tend to support either of the theories of attack upon the judgments.

Furthermore, there has been no showing of the materiality of the evidence. The ground of materiality is not set out in the statement of reasons advanced for the granting of a new trial, and the supporting affidavit is silent in that regard. The testimony of the respondent was that at the end of the fruit and produce season of 1928, the deceased was indebted to him in the sum of $5,000, and that a note was given him by the deceased for that amount; and that at the close of the season for the year 1929, there was an indebtedness of $10,000 for that season for which a note for that amount was given, and later changed into two notes each for $5,000. As the Court recalls the evidence there was nothing to show that the first note was given in full settlement of all accounts existing between the deceased and the respondent in the early part of the year 1929, nor that the note of $10,000 was given in full settlement of all accounts existing at the latter part of the year 1929. The testimony in this respect was confined to indebtedness arising out of their operations for the years 1928, and 1929. The petitioner did not deny that her husband and the respondent had had extensive business dealings both before and after the year 1928, and no effort was

made to ascertain from the respondent whether the notes in dispute were given in settlement of all accounts which, within the permissible ranges of time as disclosed by the notes, might have existed. So far as the Court knows, or can know, from the testimony given, or from the petitioner's supporting affidavit, there may have been other matters of account between the deceased and the respondent to which the supposed new evidence relates.

Counsel for the petitioner in their brief, endeavor to show the materiality of the new evidence, if not by direct statement, at least by inference, in that the respondent's testimony was that the settlements between him and the deceased were in full of existing accounts, and not for specified periods or seasons of business operations. They assert as an established fact that the deceased and the petitioner left Dagsboro for Florida on December 28, 1929; yet, they say, a note for $6,000 was discovered, dated only four days after the supposed settlement for $15,000, and that it was never a part of the respondent's story that the deceased had owed as much as $21,000, nor that he had paid $6,000 toward discharging the debt of $15,000. They further state as a fact that on the day the deceased left for Florida he had made out a check to the respondent for $2,567.40 and on the sixth of January, a check for $2,432.45. These facts are said to be utterly contradictory to the account given by the respondent in his testimony, he never having mentioned the note of $6,000 nor the checks, one given as he was about to leave for Florida, the other after he had arrived in Florida.

The fallacy of this argument is that it assumes the truth of facts found otherwise by the jury. The petitioner, her daughter, and one Hudson did testify that they left Dagsboro for Florida on December 28, 1929; that the petitioner and her husband did not stop at Atlantic, Virginia; and that the petitioner and her husband remained in Florida

until after the time when the respondent said the petitioner signed the three notes at his store. If this testimony had been believed by the jury, the verdicts must have been in the petitioner's favor, for the petitioner's evidence in this respect was wholly contradictory. The whole basis of this argument falls, however, for the reason that the jury found as a fact that the petitioner signed the notes at the store of the respondent, in Atlantic, Virginia, in the presence of her deceased husband, some time in the early months of 1930.

The note and the checks, offered as newly discovered evidence, are material only upon an affirmative showing that they had some relation to the settlement of seasonal accounts between the deceased and the respondent at the first and the last of the year 1929. Mere possible, remote inferences to be drawn from these documents supposed to reflect the falsity of the respondent's testimony is not a showing of materiality. The argument would seem to be that as the deceased and the petitioner had executed and delivered to the respondent a note for $6,000 on a certain date, and as the deceased had given the respondent checks on certain dates for considerable amounts, the petitioner did not sign the disputed notes. The respondent, could contend, with equal reason, or lack of it, that, as the deceased and the petitioner executed and delivered to him one note for $6,000, therefore, the petitioner signed the disputed notes.

There has been no showing of diligence or of materiality, and this reason for a new trial must fail.

Mention has been made of the loose and unsatisfactory practice which has developed in this state with respect to attacks upon judgments. The Supreme Court, upon an application of the respondent for a writ of prohibition herein referred to, has availed itself of the opportunity to point

out the nature and character of the proceedings in such cases, and the correct practice therein.

The Superior Court, in entertaining an application to open a judgment by confession under warrant of attorney, exercises its jurisdiction, not because of any statutory authority, but under its inherent power over its own records. *Hollis, Adm'r, v. Kinney,* 13 *Del. Ch.* 366, 120 *A.* 356. Where the proceeding is dependent upon evidence aliunde the record, the defendant in the judgment is required to file a verified petition setting forth in reasonable detail the precise ground upon which reliance is placed, and praying for the issuance of a rule upon the plaintiff in the judgment to show cause why it should not be opened and the defendant let into a trial for the purpose of determining the truth of the matters alleged. The issuance of the rule may be waived, and plaintiff in the judgment may appear by counsel without service of the writ, or service may be had in the usual way. If the petition be deemed to be insufficient, a motion to dismiss may be made and heard at any time fixed by the Court, otherwise the plaintiff should be required to file an answer. The petition and answer may be supported by affidavits or depositions, or the Court may hear evidence orally. If no sufficient ground is shown for the opening of the judgment, the rule is discharged and the petition dismissed. The proceeding is equitable in its nature, is addressed to the discretion of the Court, and is to be disposed of in accordance with the principles of equity. The Court sits as a Chancellor, and acts in the exercise of a sound discretion.

If the testimony at the hearing on the rule is deemed to be sufficient to require the opening of the judgment and a trial of the disputed matters of fact, the Court will order the judgment opened, and will proceed to hear and determine the issues of fact, or will submit the issues to a jury. A jury trial is not demandable as of right; *Miles*

*v. Superior Court, supra.* It is proper for the Court to consider the preponderance of the evidence, and where a substantial doubt exists, the Court may submit an issue to the jury, but it is a mistake to suppose that the Court to which the application is made cannot judge of the weight of the evidence and the credibility of the witnesses, but, in every case where there is a conflict of testimony, must submit the issues to a jury. Moreover, when an issue is submitted, it is for the purpose of informing the conscience of the Court upon the particular questions embraced within it. *Appeal of Jenkintown Nat. Bank,* 124 *Pa.* 337, 17 *A.* 2; *Appeal of Perth Amboy Terra Cotta Co.,* 124 *Pa.* 367, 17 *A.* 4; *Blauvelt v. Kemon et al.,* 196 *Pa.* 128, 46 *A.* 416; *Schnebel v. Nelson et al.,* 238 *Pa.* 341, 86 *A.* 265; *Cruzan v. Hutchinson,* 210 *Pa.* 88, 59 *A.* 485; *Early's Appeal,* 90 *Pa.* 321.

In the instant case, following an unsatisfactory practice, no answer was required to be filed. The judgments were opened upon the averments of the petitions alone. Upon that showing, nothing appearing to the contrary, the Court, perhaps, was justified in opening the judgments and in submitting the issues to the jury. The jury found against the petitioner. Under the evidence, the verdicts were righteous verdicts, and the Court accepts them as expressive of the truth of the matters submitted under the issues.

The motions in arrest of judgment and for a new trial are denied.