CHARLES TILGHMAN, appellee, v. CHICAGO & NORTH WESTERN RAILWAY COMPANY, a corporation, and CARROLL PLETCHER, appellants.

No. 50498.

1340

1342

MAY 8, 1962.

REHEARING DENIED JULY 23, 1962.

Archerd, Birdsall & Draheim, of Clarion, and Davis, Huebner, Johnson, Burt & Fulton, of Des Moines, for appellants.

Lundy, Butler & Wilson, of Eldora, for appellee.

GARFIELD, C. J.—This is a law action to recover from defendants Chicago & N. W. Ry. Co. and Carroll Pletcher, engineer on its freight train, for personal injuries to plaintiff, Charles Tilghman, driver of a truck which collided with the train at a grade crossing near the northwest edge of the town of Woolstock. Defendants appeal from judgment against them on jury verdict for plaintiff under the doctrine of last clear chance.

Errors are assigned in: rulings that a jury question was presented under the last-clear-chance doctrine, giving instructions 7 and 11 to the jury, excluding certain testimony, and permitting plaintiff's counsel to argue the extent of his injuries and damages in closing jury argument.

The collision occurred October 24, 1958, about 7:20 a.m., at the grade crossing of a blacktop primary highway and the railroad track. Plaintiff was driving an unloaded tractor-trailer, 45 feet long, east. The train was going north. It consisted of 28 cars pulled by two Diesel units. Sixteen cars were loaded, 12 empty. Front end of the forward Diesel unit struck the right side of the tractor just beneath its right door. The truck was

moving from 30 to 47 miles per hour, the train from 20 to 35. There is much evidence the speed of both remained constant at all material times prior to the collision. The train traveled about 1600 feet north from the point of collision before it was brought to a stop. There were no skid or tire marks on the highway to indicate brakes were applied to the truck.

Three witnesses who lived within two blocks of the crossing testify for plaintiff they heard no whistle for the crossing. One says she was listening attentively for the train whistle because she thought her son, a brakeman for the railroad, would be on the train. The trainmen testify a whistle was sounded for the crossing and a distress or emergency signal was constantly sounded while the train traveled several hundred feet just before reaching the crossing.

The only claim of negligence submitted to the jury was that when plaintiff reached a point where he was in peril defendant engineer was aware of plaintiff's situation and realized, or in the exercise of reasonable care should have realized, he was in peril and at that time the engineer had the ability to decrease speed of the train to permit plaintiff to pass safely over the crossing, and thus had the last clear chance to avoid the collision, but he negligently failed to do so.

In motions for directed verdict and judgment notwithstanding the verdict defendants contended there was no evidence from which they could be held liable under the doctrine of last clear chance. The argument in support of this contention here is that when defendants knew or should have known plaintiff was in peril, insufficient time remained to avoid the collision by reducing speed of the train to permit him to pass safely over the crossing.

█ I. The doctrine of last clear chance presupposes plaintiff's contributory negligence. It applies where there is evidence defendant (1) has actual knowledge of plaintiff's situation, (2) realizes or should in the exercise of reasonable care realize he is in peril, (3) has the ability to avoid injury to plaintiff thereafter and, of course (4), fails to do so. Strom v. Des Moines & Central Iowa Ry. Co., 248 Iowa 1052, 1070, 82 N.W.2d 781, 791, and citations; Olson v. Truax, 250 Iowa 1040, 1049, 97 N.W.2d 900, 905, and citations.

"The injured party may not ordinarily invoke the last-clear-chance doctrine where there is a collision between his moving motor vehicle and a train at a crossing. Such a vehicle approaching a railroad does not usually reach a position of danger until it can no longer be stopped or turned aside and there is seldom appreciable time thereafter for the trainmen, in the exercise of ordinary care, to avoid the collision [citations]." Strom case, supra, at page 1071 of 248 Iowa, page 792 of 82 N.W.2d.

The facts in the Strom case make the actual decision there on the question of last clear chance inapplicable here. That collision occurred at night. Nothing indicated Mrs. Strom was oblivious to the train's approach or that the trainmen were so advised until it was clearly too late to avoid the collision. It could not be known until she was 60 feet from the crossing that she would not turn off at that point onto an intersecting highway which did not cross the railroad tracks.

▬ In considering this first assigned error of course it is our duty to view the evidence in the light most favorable to plaintiff.

▬ There can be no question concerning proof of the first and fourth propositions above enumerated—defendants had actual knowledge of plaintiff's situation and failed to avoid injury to him. We must hold that when the evidence is viewed most favorably to plaintiff there is substantial proof defendants realized, or should in the exercise of reasonable care have realized, plaintiff was in peril and had the ability to avoid injury to him thereafter.

The engineer was seated on the right (east) side of the front Diesel unit as it approached the crossing. The fireman and head brakeman were seated on the left (west) side—the side from which plaintiff approached. Both the fireman and brakeman testify they observed the truck continuously from the time it was a quarter mile from the crossing. The fireman says his observation was that speed and direction of the truck remained the same.

The brakeman testifies that when both truck and train were about 500 to 600 feet from the crossing he called to the engineer, "Keep blowing the whistle *because I don't think he*

*sees us*", referring to the truck driver. The truck kept coming and the brakeman then said to the engineer, "Just keep blowing the whistle because the truck is still coming and *I don't think he sees us.*" When the truck was coming off a highway bridge 69.5 feet west of the crossing the brakeman told the engineer to "spike her", meaning to apply the emergency brakes.

The fireman says when the train was 200 to 300 feet from the crossing he told the engineer to keep whistling, warned him the truck was still coming and its speed had not changed.

Defendant engineer testifies the fireman and brakeman told him when the train was 300 to 400 feet from the crossing this truck was still approaching and when he was about 200 to 300 feet from the crossing they both told him there was a truck approaching from the west traveling fast and *it didn't look like he was going to stop.* Because these two trainmen told him this he gave the distress or emergency signal by holding down the whistle cord continuously until the time of collision.

Plaintiff, who was alone in the truck, is the victim of amnesia and remembers nothing that happened from the time he turned onto the highway west of the crossing until about a week afterwards.

Reasonable minds could fairly conclude the brakeman and fireman realized plaintiff was oblivious to the approach of the train and hence in peril, and they so informed the engineer, at a time when he had the ability to avoid injury to plaintiff. A reasonable explanation of the engineer's continuing to sound the distress or emergency signal is that he believed plaintiff was unaware of the train's approach and hoped thereby to call it to his attention.

▮ Resort need not be had to our holdings that it is not necessary to show defendant's actual knowledge of plaintiff's peril if defendant should have realized the peril in the exercise of reasonable care. "It is sufficient if peril was so imminent that to a person of ordinary prudence the infliction of injury would seem probable if proper effort were not made to avoid it." Menke v. Peterschmidt, 246 Iowa 722, 726, 69 N.W.2d 65, 69, and citations; Winegardner v. Manny, 237 Iowa 412, 415, 21 N.W.2d 209, 211.

1346

It was not necessary, in order to avoid the collision, to stop the train before it reached the crossing. If its speed had been reduced just a little or a little sooner plaintiff could have crossed the railroad track in safety. If the train had reached the crossing just one second later than it did this collision would have been avoided. At least the jury could properly so find. As it was, the truck was partly across the track when it was struck without substantial reduction in the train's speed.

There is clear evidence defendant did nothing to avoid this collision except to continue to sound the whistle to which reasonable minds could find plaintiff was oblivious, as defendants knew or should have known. The engineer admits he did not reduce the throttle until after the collision. The conductor says he did not hear or feel the brakes applied. The rear brakeman testifies there was air in the air gauge after the collision and if the emergency brakes had been fully applied it would probably have registered zero. As stated, the train traveled 1600 feet after the collision.

The fact the trainmen may not have had time, after realization of plaintiff's peril, to stop the train does not prevent operation of the last-clear-chance doctrine where the evidence indicates that had they even checked the speed of the train it would have enabled plaintiff to clear the crossing. 44 Am. Jur., Railroads, section 539, page 789. See also Arp v. Illinois Central R. Co., 230 Iowa 869, 872, 299 N.W. 413, 414.

Defendants' argument overlooks the fact the finding is warranted that the trainmen were aware plaintiff was in peril when he approached the crossing oblivious of impending danger. That plaintiff may then have been physically able to avoid the collision, should he become aware of the danger, does not prevent application of the last-clear-chance doctrine as a matter of law. The engineer was not justified in assuming plaintiff would stop before reaching the crossing when his fellow trainmen had warned him, in effect, more than once plaintiff appeared to be unaware of the approaching train.

75 C. J. S., Railroads, section 814c(2)(b), page 93, thus states the applicable law: "The trainmen, however, must act on the reasonable appearance of peril, * * * and cannot rely on

the presumption that the person injured will avoid injury and keep out of danger where such person, by his actions and manner, indicates that he will not get, or stay, out of danger, as where the circumstances show that the person injured is oblivious to the peril."

Restatement, Torts, section 480, states in effect that a negligent plaintiff may recover if defendant "(a) knew of the plaintiff's situation, and (b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and (c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

Comment b under section 480 is quite pertinent here: "However, it is not necessary that the circumstances be such as to convince the defendant that the plaintiff is inattentive and, therefore in danger. It is enough that the circumstances are such as to indicate a reasonable chance that this is the case. Even such a chance that the plaintiff will not discover his peril is enough to require the defendant to make a reasonable effort to avoid injuring him. Therefore, if there is anything in the demeanor or conduct of the plaintiff which to a reasonable man in the defendant's position would indicate that the plaintiff is inattentive and, therefore, will or may not discover the approach of the train, the engineer must take such steps as a reasonable man would think necessary under the circumstances. If a train is at some little distance, the blowing of a whistle would ordinarily be enough, until it is apparent that the whistle is either unheard or disregarded. The situation in which the plaintiff is observed may clearly indicate that his inattention is likely to persist and that the blowing of the whistle will not be effective. If so, the engineer is not entitled to act upon the assumption that the plaintiff will awaken to his danger but may be liable if he does not so reduce the speed of his train as to enable him to stop if necessary."

Strom v. Des Moines & Central Iowa Ry. Co., supra, 248 Iowa 1052, 1070, 82 N.W.2d 781, 791, cites section 480 of the Restatement with apparent approval.

A statement in the Strom opinion and others that negligence should not ordinarily be predicated on two seconds of time

has no application here under the view of the evidence most favorable to plaintiff.

An article on the Last Clear Chance Doctrine in 5 Iowa Law Bulletin 36, 50, by Herbert F. Goodrich, now a Judge of the Third Circuit and director of the American Law Institute, reviews all pertinent Iowa cases then decided. The article thus summarizes our precedents: "In many instances the plaintiff has recovered when the defendant has acted negligently after discovering plaintiff who is unconscious of danger, though upon the facts it appears that the plaintiff could himself have avoided the injury by attention to his own safety at the time the danger became imminent."

That a traveler is in peril when he approaches a railroad track oblivious to the approach of a train and fails to heed a warning signal, see Kelley v. Chicago, B. & Q. Ry. Co., 118 Iowa 387, 392, 92 N.W. 45, and citations; Welsh v. Tri-City Railway Co., 148 Iowa 200, 205, 126 N.W. 1118. See also Schreiber Mills, Inc. v. Lee County, 249 Iowa 746, 750, 751, 88 N.W.2d 811, 814; Hitchcock v. Iowa Southern Utilities Co., 233 Iowa 301, 313, 6 N.W.2d 29, 35; Peterson v. Burkhalter, 38 Cal. 2d 107, 110, 237 P.2d 977, 979; Del-Mar Garage v. Boden, 95 Ind. App. 317, 179 N.E. 729, 731; Sheerin v. St. Louis Public Service Co., Mo., 300 S.W.2d 483, 489.

The Kelley case, supra, cited with approval several times, says, "there being reasonable ground for them to believe that such person was not aware of his danger, it was then their duty to look out for him, and failure to do so was negligence [citations]."

The Schreiber Mills case, supra, recognizes that one may be in peril when he is oblivious to danger. Our Hitchcock opinion recognizes that a motorman on an interurban train has reason to believe a collision is imminent when he observes the undiminished speed of a motorist approaching a crossing at a distance of 250 feet.

Peterson v. Burkhalter, supra, states: "As to the contention that Peterson may not have the benefit of the doctrine of last clear chance because he was physically able to prevent the accident by stopping or turning, Burkhalter ignores the fact that

the inattentive plaintiff, as well as the physically helpless one, comes within the scope of the rule. It applies "* * * not only where it is physically impossible for him to escape, but also in cases where he is totally unaware of his danger and for that reason unable to escape * * *.' [citation]."

Sheerin v. St. Louis Public Service Co. tersely states, "It is of no consequence what brings about or continues the situation of peril. It may be through the obliviousness of the one imperiled, * * *."

An annotation in 70 A. L. R.2d 9, 21 asserts: "* * * courts are in substantial agreement that the last clear chance doctrine applies to render a railroad liable where its trainmen discovered a person in a position which they realized, or reasonably should have realized, was dangerous to him, and failed to exercise reasonable care to avoid injury to him, notwithstanding he was physically able to escape the danger until the instant before he was struck, or at least down to a point of time after which it was impossible for the trainmen to avert the accident, and was guilty of continuing and concurrent negligence in the sense of his continuing obliviousness of his own danger." To like effect are annotation, 171 A. L. R. 365, 379; 38 Am. Jur., Negligence, section 222.

■ II. Defendants assign error in the giving of instruction 7 on sudden emergency. The first sentence of the instruction is identical with the first sentence of instruction 5.4 of Uniform Jury Instructions published by the Iowa State Bar Association. The other sentence of the instruction differs somewhat from the other sentence of the uniform instruction. Substance of the instruction is that when one is confronted with a sudden emergency, not of his own making, he is not held to the same accuracy of judgment as if he had time for deliberation but is required to act as a careful person under like circumstances.

Objection to the instruction is that it does not designate whether it applies to plaintiff or defendant engineer, if it was intended to apply to the latter it should so state, if as an explanation or legal excuse for plaintiff, the emergency was of his own making and hence the evidence does not justify the instruction.

1350

We think when instruction 7 is considered in connection with all the instructions it is not reversible error on the grounds asserted. No question of plaintiff's contributory negligence or legal excuse available to him was submitted to the jury. It was told in effect plaintiff's contributory negligence was immaterial if he proved by a preponderance of the evidence the essential elements of the doctrine of last clear chance. Instruction 6 deals at length with this doctrine and concludes by stating defendants would be liable only for their negligent operation of the train as claimed by plaintiff and in accordance with the instruction. Instruction 7 then follows.

That instructions should be read and considered together is too well settled to require citation. See, however, Fagen Elevator v. Pfiester, 244 Iowa 633, 639, 56 N.W.2d 577, 580, and citations; Hackman v. Beckwith, 245 Iowa 791, 799, 64 N.W.2d 275, 280, 281; Hicks v. Goodman, 248 Iowa 1184, 1191, 85 N.W. 2d 6, 9.

III. Error is assigned in the giving of instruction 11 on the weight to be accorded testimony of witnesses that they did not hear the train signal as it approached the crossing. Objection to the instruction is it submitted to the jury an issue the court had withdrawn from its consideration.

Failure to signal approach to the crossing is one of the charges of negligence in plaintiff's petition. At the close of the evidence the court withdrew it and other charges of negligence, except that based on alleged last clear chance, from jury consideration on the ground of lack of evidence of plaintiff's freedom from contributory negligence. The court announced, in effect, it would submit to the jury the question whether defendants were negligent in not reducing speed of the train after they were alerted to plaintiff's peril. Defendants then moved to strike the testimony of plaintiff's three witnesses that they heard no train signals on the ground it created no conflict with positive testimony signals were given. The motion did not assert as a ground the withdrawal from jury consideration of charges of negligence. This motion was overruled. Defendants then requested the precise instruction given as No. 11.

Of course defendants could not ordinarily object to the giving of an instruction they requested since any error there-

in would be invited by them. Hackman v. Beckwith, supra, 245 Iowa 791, 800, 64 N.W.2d 275, 281; Odegard v. Gregerson, 234 Iowa 325, 332, 333, 12 N.W.2d 559, 562, and citations; Leonard v. City of Muscatine, 227 Iowa 1381, 1385, 291 N.W. 446. 5 C. J. S., Appeal and Error, section 1507(2), page 915; 3 Am. Jur., Appeal and Error, section 876, page 428. They seek to avoid this rule on the ground they did not know, when the instruction was requested, whether the issue of failure to sound a signal would be submitted. The record hardly supports this.

Further, we think instruction 11 was not prejudicial to defendants. Its language is quite favorable to them. Apparently no attempt was made to balance the instruction. The jury was plainly told all charges of negligence against defendants, except as to the doctrine of last clear chance, were withdrawn from their consideration and should be disregarded. So the jury could scarcely have understood from instruction 11 the issue of failure to signal was submitted to it. Although not a pleaded issue, as the case was submitted to the jury, the question whether a signal was given was an important circumstance surrounding the collision.

IV. Error is asserted in excluding offered testimony of defendants' witness Frank L. Boggs, an experienced engineer for the Chicago Great Western Railway. He was asked, "From your experience and operation of a locomotive such as illustrated in plaintiff's exhibit 23 have you had frequently the experience of motor vehicles approaching a railroad crossing at a continuous speed right up to the crossing and abruptly stopping?" He answered, "Many of them. That is almost daily operation. Sometimes those things happen several times on a run of 100 miles. You encounter that all over. Whether they are playing 'chicken' with you, you don't know." The witness went on to say it damages equipment and endangers trainmen to apply emergency brakes.

Boggs was then asked, "When you are operating a locomotive and cars come down the highway to a railroad crossing the thought is going through your mind whether he will stop or whether—" The witness interrupted to answer, "You pray * * * for him to make that stop because you are powerless to avoid hitting him."

To both these offered answers the court sustained plaintiff's objection of incompetent, irrelevant, immaterial and an opinion and conclusion of the witness. It is argued this was proper evidence of a common practice or custom.

The last offered answer quoted above, insofar as it was favorable to defendants, was properly excluded as the witness' opinion or conclusion. There is other testimony of this witness that emergency application of brakes is hard on train equipment, so exclusion of that part of the first answer was not prejudicial to defendants.

With reference to the quoted portion of witness Boggs' first offered answer, defendants contended upon the trial and argue here the practice of motorists to drive toward an oncoming train and stop abruptly before going upon the tracks is of such common and general knowledge that judicial notice must be taken of it.

Williams v. Mason City & Fort Dodge Ry. Co., 205 Iowa 446, 453, 214 N.W. 692, 695, states: "Travelers in motor vehicles frequently and customarily drive toward an oncoming train and stop just before going upon the tracks, * * *." This is repeated in Arp v. Illinois Central R. Co., supra, 230 Iowa 869, 871, 299 N.W. 413, 414; Hitchcock v. Iowa Southern Utilities Co., supra, 233 Iowa 301, 313, 6 N.W.2d 29, 35; Menke v. Peterschmidt, supra, 246 Iowa 722, 730, 69 N.W.2d 65, 71.

We may accept defendants' contention the custom of motorists to drive toward an oncoming train and stop abruptly is of such common and general knowledge that judicial notice is taken of it. If this be true the exclusion of the first quoted answer of witness Boggs was not prejudicial error. 65 C. J. S., Negligence, section 232, page 1049, states: "Evidence of general custom or usage is inadmissible * * * as to acts, the manner of doing which is common knowledge, * * *." To like effect is 38 Am. Jur., Negligence, section 319, page 1017.

20 Am. Jur., Evidence, section 26, says, "The courts repeatedly refuse to hear evidence concerning matters of which they take judicial notice." Idem, section 28, states: "Jurors are not expected to lay aside matters of common knowledge * * * any more than the court is expected to ignore its own knowledge and experience with ordinary affairs." From 31 C. J. S., Evidence,

section 13a, pages 519, 520: "Facts judicially noticed are thereby presented to the court as effectually as though they had been established by proper proof, and are of equal force, * * *." To like effect is 9 Wigmore on Evidence, Third Ed., section 2567, page 535.

These precedents may be cited for the proposition evidence is not admissible of a custom which is of common and general knowledge and of which judicial notice is taken or that the party offering it is not prejudiced by its exclusion: Eamiello v. Piscitelli, 133 Conn. 360, 51 A.2d 912, 916; Commonwealth v. Jacobson, 183 Mass. 242, 66 N.E. 719, 721, 67 L. R. A. 935, affirmed 197 U. S. 11, 25 S. Ct. 358, 49 L. Ed. 643; Mazmanian v. Kuken, 285 Mass. 516, 189 N.E. 815, 816; Rothstein v. Monette, 17 N. Y. Supp.2d 369, 374; Simonds v. City of Baraboo, 93 Wis. 40, 44, 67 N.W. 40, 42, 57 Am. St. Rep. 895. See also McNally v. Colwell, 91 Mich. 527, 52 N.W. 70, 30 Am. St. Rep. 494.

Simonds v. City of Baraboo, supra, says of the rule that evidence of custom bearing on the fact of negligence is admissible, "At the foundation of the rule lies the idea that the act constituting the subject of the custom is one in respect to which the manner of doing it is not a matter of common knowledge."

It appears well settled that trial courts have considerable, although not unlimited, discretion in determining the admissibility of evidence of custom on the question of negligence. (We assume, as defendants contend, Boggs' testimony related to custom.) Eamiello v. Piscitelli, supra; Napolitano v. Eastern Motor Express, 3d Cir., N. J., 246 F.2d 249, 253; Edgarton v. H. P. Welch Co., 321 Mass. 603, 74 N.E.2d 674, 678, 174 A. L. R. 462; 65 C. J. S., Negligence, section 232, page 1049. See also Motter v. Snell, 250 Iowa 1247, 1254–1257, 95 N.W.2d 735, 739, 740, 98 N.W.2d 746. We are not persuaded there was such an abuse of discretion here as calls for a reversal.

In connection with this assigned error it may be stated the court instructed the jury in substance that defendant engineer had the right to assume plaintiff would observe the legal requirement imposed on him to yield the right of way to the train over the crossing and slow down or stop if necessary, until the

engineer learned, or in the exercise of reasonable care should have learned, otherwise.

V. There is no merit to defendants' final contention it was error to permit plaintiff's counsel to reargue in his closing jury argument the nature and extent of plaintiff's injuries and medical and hospital expense. Basis for the assignment is defendants' contention they did not refute, in their argument, what was said in plaintiff's opening argument on these matters. And, it is asserted, the closing argument must be confined to reply to matters argued by defendants.

There are several answers to this assignment. Where, as here, the arguments of the complaining party are not preserved, it will be presumed the argument complained of was a legitimate response thereto. Hackaday v. Brackelsburg, 248 Iowa 1346, 1354, 85 N.W.2d 514, 519, and citations.

The trial court evidently thought enough was said in argument for defendants regarding plaintiff's injuries so his closing argument was proper response thereto. As defendants concede, the trial court has broad discretion in passing on the propriety of jury argument and we will not reverse unless there has been clear abuse of such discretion. Before a new trial will be granted for misconduct in argument it must appear prejudice resulted or a different result could have been probable but for such misconduct. Johnson v. Kinney, 232 Iowa 1016, 1027, 7 N.W.2d 188, 194, 144 A. L. R. 997, 1006, and citations; Connelly v. Nolte, 237 Iowa 114, 130, 21 N.W.2d 311, 319, and citations; In re Estate of Springer, 252 Iowa 1220, 1234, 110 N.W. 2d 380, 389. No clear abuse of discretion is shown here.

If defendants were prejudiced by the argument complained of it would seem it would be reflected in the size of the verdict. It is not contended the verdict is excessive. See in this connection Ruud v. Grimm, 252 Iowa 1266, 1275, 110 N.W.2d 321, 326.

Nor are we prepared to hold it would be reversible error for the trial court, in its discretion, to permit plaintiff's counsel to argue in closing argument the extent of plaintiff's injuries and medical and hospital expense, even though no mention were made of these matters in defendants' argument. Rule 195, Rules

of Civil Procedure, provides, referring to arguments by the party with the burden of the issue, "In opening, he shall disclose all points he relies on, and if his closing argument refers to any new material point or fact not so disclosed, the adverse party may reply thereto, which shall close the argument. A party waiving opening argument is limited, in closing, to reply to the adverse argument; otherwise the adverse party shall have the closing argument."

There is no claim plaintiff's opening argument here did not disclose all points he relied on nor, of course, that he waived opening argument. The implication of the last sentence quoted above from rule 195 is that plaintiff (assuming he has the burden) is not strictly limited in his closing argument to reply to defendant's argument, unless plaintiff waives opening argument.

The decisions generally hold it is not reversible error to refuse to limit plaintiff's closing argument to strict reply to defendant's argument, at least so long as no new matter is introduced and it is not outside the issues or evidence. Reddell v. Norton, 225 Ark. 643, 285 S.W.2d 328, 331, 332; Chandler v. Miles, 38 Del. (8 Harr.) 431, 193 A. 576, 580; Fickerle v. Herman Seekamp, Inc., 274 Ill. App. 310, 324; Cumming v. Allied Hotel Corp., Mo. App., 144 S.W.2d 177, 182; Republic Ins. Co. v. Hale, Tex. Civ. App., 69 S.W.2d 482, 484, reversed on other grounds 128 Tex. 616, 99 S.W.2d 909; Kaime v. Trustees of Village of Omro, 49 Wis. 371, 5 N.W. 838, 844.

88 C. J. S., Trial, section 169, page 339, states: "* * * the fact that he is not confined to a strict reply to the arguments of opposing counsel is not a fatal error where it does not appear that he was permitted to wander from the issues in the case." No authority contrary to the above has been called to our attention.

We find no reversible error in any respect argued by defendants.—Affirmed.

THOMPSON, PETERSON, THORNTON and SNELL, JJ., concur.

HAYS and LARSON, JJ., dissent.

OLIVER and MOORE, JJ., take no part.

1356

HAYS, J.—I respectfully dissent.

In my humble opinion, if the rule announced under Division I of the majority opinion becomes the law of Iowa the day of rapid railway passenger and freight service is at end. Even assuming that every grade crossing in the state is equipped with gates or electric sound and light equipment, this would still make the majority announced rule applicable.

I do not find particular fault with the statements set forth as to the general statutory law relative to the *last clear chance*. I do disagree with the holding of the majority that the factual situation, presented in the instant case, brings it within those statutory rules.

True, on an appeal such as is now under consideration we must accept the facts in the light most favorable to plaintiff, but even this established rule must mean within reason as revealed by the entire record. Such has not been the case here. The record clearly shows that both parties tried the case upon the speed of the train, at the time in question, being 30 to 35 miles per hour and that of the truck, the same. There is one shred of evidence, admitted over a proper objection, that the train's speed was 20 miles per hour but, in my opinion, such becomes of no consequence when viewed in the light of the entire record. The same situation exists as to the blowing of the train's whistle. One witness, who lived near the tracks, states she did not hear a whistle after the train passed the elevator some 1300 feet south of the crossing, although she was especially listening for it. Two other witnesses, living nearby, say they did not hear a whistle but were not paying any particular attention to it. One witness states he was working near the track and heard the crossing whistle and later the emergency blasts. The record is replete with testimony that the distress whistle was blowing almost continuously after the train came within three or four hundred feet of the crossing.

The majority opinion as to the *last-clear-chance* rule is based primarily upon the testimony of the fireman and brakeman, who were riding in the engine, that when the truck and train were each about 500 to 600 feet from the crossing he told the engineer "Keep blowing the whistle *because I don't think he sees us.*" The truck kept coming and the brakeman said to the engineer "Just

keep blowing the whistle because the truck is still coming *and I don't think he sees us.*" Also, the engineer testified that when about 200 to 300 feet from the crossing he was told *"there was a truck approaching from the west and it didn't look like he was going to stop."* The record shows these statements were made in connection with the request "to keep blowing the whistle." Based upon these facts, the majority opinion says the above facts warrant the finding "that the trainmen were aware plaintiff was in peril when he approached the crossing oblivious of impending danger." If these were the only facts appearing in the record, I could perhaps accept such a conclusion, but other very material facts are there and must be considered.

Testimony was offered and rejected to the effect that it is customary for drivers of automobiles *"to approach a railway crossing at a continuous speed right up to the crossing and abruptly stopping."* The majority opinion seems to accept defendant's contention that such custom is so common as to warrant the rejection of such testimony. Judicial notice of such fact may be taken. This fact, especially upon the motion to direct and the motion for judgment notwithstanding the verdict, assumes considerable importance upon the question of "peril" and the trainmen's realization thereof.

The record clearly shows by plaintiff's own witness, J. Stannard Baker, the distance in which the truck and train could be stopped when traveling at given speeds. As to the train: at 30 miles per hour—341 feet; at 35 miles per hour—451 feet. As to the truck: at 30 miles per hour—104 feet; at 35 miles per hour—133 feet. This expert witness was then asked:

"Q. Using the center of the crossing as the starting, if the steptank of the \* \* \* truck \* \* \* were at the starting point; if the rig was 45 feet in overall length and headed east, calculate the time it would take for the tractor traveling at a specified speed to clear the crossing and clear the railroad train passing northbound; could you do this? A. Yes. Q. Given the conditions specified in the last question and a speed of the truck of 30 miles per hour; how much time would it take for the truck-tractor to clear the crossing and clear the railroad train passing northbound? A. It would take approximately $95/100$ of a second."

At 35 miles per hour the truck would clear in approximately $\frac{8}{10}$ of a second.

"Q. * * * the train traveling at 30 miles per hour, 300 feet from the crossing, if the emergency brakes were applied at this distance what time would be gained by such braking? A. It would take about 300 feet for the train to stop so that the time saved would be—there would be no collision." At 35 miles per hour at 300 feet from the crossing if the emergency brakes were applied at this distance, you would gain 1 and $\frac{2}{10}$ seconds.

Under this record based upon plaintiff's own testimony, plaintiff was not actually in peril so long as he had it within his power to stop—short of a collision. This distance was 104 feet at 30 miles per hour; 133 feet at 35 miles per hour. Thus it is without dispute in the record that when plaintiff passed into the danger zone—104 feet or 133 feet from the crossing—depending upon the speed, when actually he was in peril, nothing the trainmen could do would have avoided the collision. Up to the point of the danger zone (power to stop), if judicial notice is taken of the custom of drivers to approach a railway crossing at high speed and abruptly stop (in other words—to fail to start slowing the car before the danger zone is reached), I am not able to agree with the majority opinion that the trainmen "knew or reasonably should have known the plaintiff was in peril." In this connection a statement appearing in Williams v. Mason City & Fort Dodge Ry. Co., 205 Iowa 446, 453, 214 N.W. 692, is very much in point. It is:

"Travelers in motor vehicles frequently and customarily drive toward an oncoming train and stop just before going upon the tracks, in order to permit the train to proceed on its way. There is in such conduct, however, no 'peril' until such wayfarer fails to stop in a zone of safety. Those in charge of the train have a right to assume that he will not drive into danger. * * *

" 'Those engaged in the operation of railway trains are not bound to anticipate that drivers of automobiles and trucks upon the highways will be guilty of negligence in approaching crossings without taking reasonable measures to ascertain the approach of a train. If the rule were otherwise, the last clear chance doctrine would require the trainmen, at the peril of

being held responsible for an accident, to slow down every time they should observe an oncoming motorist in a position where, if he did not see the train, he might negligently collide with it.' "

Assuming that the brakes on the train had been set when the train was 300 feet from the crossing, which is the distance the train was when the above statements of the brakeman and fireman were made, the collision would have been avoided by a hairbreadth or a matter of a split second. This holding is certainly contrary to our decisions that hold that "negligence should not ordinarily be predicated on an emergency confronting a driver who has only three seconds to make a decision. * * * 'To predicate negligence on two seconds of time is in and of itself a monumental refinement.' " See Menke v. Peterschmidt, 246 Iowa 722, 733, 69 N.W.2d 65, and cited authorities.

If it be assumed that the trainmen were negligent in not slowing the train when they first saw the truck approaching with no apparent reduction of speed, which seems to be the majority view, this does not create a *last-clear-chance* situation. In Menke v. Peterschmidt, 246 Iowa 722, 727, 69 N.W.2d 65, 69, we overruled Bridenstine v. Iowa City Electric Ry. Co., 181 Iowa 1124, 1131, 165 N.W. 435, and said: "It is defendant's negligence *after he discovers or* in the exercise of reasonable care *should have discovered* the plaintiff's danger that brings the doctrine into effect." (Italics mine.) In Strom v. Des Moines and Central Iowa Ry. Co., 248 Iowa 1052, 1071, 82 N.W.2d 781, 792, JUSTICE GARFIELD, speaking for the court, said: "The injured party may not ordinarily invoke the last-clear-chance doctrine where there is a collision between his moving motor vehicle and a train at a crossing. Such a vehicle approaching a railroad does not usually reach a position of danger until it can no longer be stopped or turned aside and there is seldom appreciable time thereafter for the trainmen, in the exercise of ordinary care, to avoid the collision."

Such clearly is this case, quaere—are Menke v. Peterschmidt; Williams v. Mason City & Fort Dodge Ry. Co., 205 Iowa 446, 214 N.W. 692, both supra, and kindred cases, now overruled?

1360

I would reverse, sustain the motion for judgment notwithstanding the verdict, and dismiss plaintiff's petition.

LARSON, J., joins in this dissent.